*Christopher Noble v. State of Maryland*, No. 2476, September Term, 2016

**IMMUNITY FROM SANCTION OF VIOLATION OF PROBATION BASED ON EVIDENCE DISCOVERED AFTER A CALL FOR ASSISTANCE FOR A MEDICAL EMERGENCY**

"The cardinal rule of statutory interpretation is to ascertain and effectuate the intent of the Legislature." *Williams v. Peninsula Reg'l Med. Ctr.*, 440 Md. 573, 580 (2014). The legislative history of Md. Code (2017 Supp.) § 1-210 of the Criminal Procedure Article ("CP") makes clear that it was intended to address the opioid crisis within the State, and its purpose was to save lives by providing immunity from prosecution and other sanctions to encourage people to call for medical assistance when a person is believed to be suffering from an overdose. The statute reflects a shift in the legal system's approach to drug use, and it reflects the General Assembly's determination that encouraging persons to seek medical assistance to save lives was a higher priority than prosecuting those persons for certain, limited, crimes.

Based on our review of the statutory scheme and the legislative history, we hold that, pursuant to CP § 1-210(d), a person may not be sanctioned for a violation of probation if evidence of the violation was obtained solely as a result of a person seeking, providing, or assisting with the provision of medical assistance. As in CP § 1-210(c), it is not required that the person experiencing the medical emergency be the one to call for help.

Circuit Court for Caroline County
Case No. 05-K-13-009620

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 2476

September Term, 2016

_____


CHRISTOPHER NOBLE

v.

STATE OF MARYLAND

_____

Graeff,
Leahy,
Salmon, James P.
    (Senior Judge, Specially Assigned),

JJ.
_____

Opinion by Graeff, J.
_____

Filed: July 25, 2018

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Bessie Decker, Clerk
April 20, 2018

This appeal involves the scope of Md. Code (2017 Supp.) § 1-210 of the Criminal Procedure Article ("CP"), which provides immunity from arrest, charge, prosecution, and sanctions for violations of probation under certain circumstances when medical assistance is requested in response to a suspected drug overdose. Appellant, Christopher Noble, appeals from the ruling of the Circuit Court for Caroline County finding him in violation of probation, revoking his probation, and sentencing him to 18 months of incarceration, with credit for time served. He argues that the circuit court's sanction, based on its finding that he violated his probation by failing to abstain from drugs, was erroneous because the evidence used to support the court's finding of a violation of probation was obtained as a result of his girlfriend's actions in calling 911 when he was unconscious.

Appellant presents the following question for this Court's review:

> Does the immunity from sanctions for probation violations created by CP Article § 1-210 extend to overdose victims regardless of whether medical assistance is sought by the victim or a bystander?

For the reasons set forth below, we answer that question in the affirmative, and therefore, we shall vacate the judgment of the circuit court and remand for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

The violation of probation proceedings at issue relate to appellant's initial guilty plea on July 17, 2013, to conspiracy to possess a narcotic with intent to distribute. The circuit court sentenced appellant to 18 months of incarceration, all suspended, and it placed appellant on probation.

On June 18, 2014, the circuit court found appellant to be in violation of his probation. It revoked appellant's probation and reinstated the original 18-month sentence of incarceration, with credit for 40 days time served.

Appellant subsequently filed a motion for modification of sentence. On October 28, 2014, the court suspended the remaining unserved portion of his sentence, and it placed appellant on probation for three years.

On April 29, 2016, paramedics responded to a call for "an unresponsive person, thought to be in cardiac arrest." They discovered appellant in the bathroom, lying on his back. He was unresponsive and suffering from respiratory depression, i.e., he was breathing approximately four times a minute. Based on appellant's pinpoint pupils and his respiratory depression, the paramedics concluded that appellant was suffering from an opiate overdose, and they administered Naloxone.[1] Appellant regained consciousness within minutes. He initially stated that "he was just working hard that day, and he took some Benadryl." Appellant later told the police that he had taken several Percocet.[2] He declined to go to the hospital.

---

[1] Naloxone is an "opioid antagonist" designed to reverse the effects of an opioid overdose. *See Opioid Overdose Reversal with Naloxone (Narcan, Evzio)*, National Institute on Drug Abuse (Apr. 2018), https://perma.cc/2R68-D8RN. When administered, Naloxone "restore[s] normal respiration to a person whose breathing has slowed or stopped as a result of overdosing with heroin or prescription opioid pain medications." *Id.*

[2] "Percocet," is a prescribed medication used to relieve "moderate severe pain." "It contains a[n] opioid (narcotic) pain reliever (oxycodone) and a non-opioid pain reliever (acetaminophen)." *See Drugs and Medication A-Z,* WEBMD, https://perma.cc/CMM2-SMMT (last visited July 10, 2018).

On July 19, 2016, the Division of Parole and Probation ("DPP") filed in the circuit court a Request for Summons ("Request"), advising the court that appellant was "not in compliance with conditions of probation." In an attached Statement of Charges, DPP indicated that appellant had violated the following probationary conditions:

(1) Condition #1 - Report as directed and follow your supervising agent's lawful instructions;

(2) Condition #8 – Do not illegally possess, use, or sell any narcotic drug, controlled substance, counterfeit substance, or related paraphernalia;

(3) Condition #13 – Submit to, successfully complete, and pay required costs for alcohol and drug evaluation, testing, treatment, as directed by your supervising agent; and

(4) Condition #16 – Totally abstain from alcohol, illegal substances, and abusive use of any prescription drug.

The Statement of Charges provided that conditions #8 and #16 were violated as a result of appellant's April 29, 2016, overdose.

On July 26, 2016, the circuit court issued an order scheduling a violation of probation hearing. Appellant subsequently filed a motion to dismiss, asserting that he had immunity based on CP § 1-210. In support of his motion, appellant provided, as Exhibit 1, a "Fact Sheet" from the Department of Health and Mental Hygiene regarding "Maryland's Good Samaritan Law," which stated, in part: "The law protects a person from a violation of a condition of pretrial release, probation, or parole, if the evidence of the

3

violation was obtained solely as a result of a person seeking, providing or assisting with medical help to save someone's life."[3]

On November 16, 2016, the court held a hearing on the motion. The State noted that, pursuant to CP § 1-210, a person who seeks or provides medical assistance for a person experiencing a medical emergency after using drugs will not be sanctioned. It argued, however, that appellant did not seek assistance, but rather, appellant's girlfriend called 911, and under these circumstances, appellant was not protected from sanction for a violation of probation. The circuit court stated that it agreed with the State's position that appellant was not immunized from sanction for the violation of probation, and it denied appellant's motion to dismiss.

On December 7, 2016, the court held a violation of probation hearing. Ben Wilson, the reporting paramedic, testified as to the events that transpired when he arrived at the scene, including his treatment of appellant.

Robert McDonald, a probation officer with the Division of Parole and Probation ("DPP"), testified from DPP records regarding the supervision of appellant while on probation. As part of appellant's terms of probation, he was directed to attend and complete alcohol and drug treatment. Mr. McDonald testified that, although DPP had records indicating that appellant entered the program, there was "no verification that [appellant] successfully completed the program." He stated that appellant had been cited for violating

---

[3] Effective July 1, 2017, the Department of Health and Mental Hygiene was renamed the Department of Health. *See* 2017 Md. Laws, ch. 214

4

the condition of probation, which required that he regularly report to DPP, based on his "failing to report on June 2nd, July 7th, and July 14th, [2016,] and anytime thereafter."[4] Mr. McDonald testified that appellant violated two other conditions: condition eight, that appellant not illegally possess, use, or sell any controlled dangerous substance; and condition 16, that he abstain from illegal substances or abusive use of any prescription drugs.

Appellant testified that he was 31 years old, and he had reported to DPP "[m]ultiple times" since June 2016. He agreed that he failed to report to his probation officer on the dates listed by Mr. McDonald. He stated that, on April 29, 2016, he had taken some medicine given to him by a friend, which he thought was Tylenol or ibuprofen, but he told the police that it possibly was Percocet because he was afraid for his life. When asked if it was true that the paramedics told him he should go to the hospital and he refused, appellant stated that, at the time, he was "in shock."

The circuit court found that there was clear and convincing evidence that appellant had violated the terms and conditions of his probation. It found that appellant failed to satisfy the conditions of his probation by failing to report, complete alcohol and drug treatment, and abstain from illegal substances, "specifically the use of any prescription drug." With respect to the latter finding, the court relied on Mr. Wilson's testimony that, after finding appellant unresponsive on the bathroom floor, he administered Narcan

---

[4] Mr. McDonald testified on cross-examination that appellant did report on December 6, 2016, the day before the violation of probation hearing.

5

(naloxone), which is designed to revive someone who has overdosed on an opiate, and when appellant was revived, he stated that he had taken Percocet. The circuit court revoked appellant's probation and sentenced him to 18 months of incarceration, with credit for five months already served.

Appellant filed an application for leave to appeal. This Court granted the application and set the case in for briefing and argument.

## DISCUSSION

Appellant's sole challenge to the circuit court's ruling revoking his probation is based on the court's finding that he violated his probation by failing to abstain from illegal substances. He asserts that, because the evidence used to support that violation was obtained when his girlfriend called 911 seeking medical assistance, pursuant to CP § 1-210, it could not be used as a basis for a sanction for a violation of probation finding.

The State contends that the circuit court correctly determined that CP § 1-210 did not provide appellant immunity from sanction for a violation of probation. It asserts that the plain language of the statute makes clear that a person is immune from a violation of probation sanction only if that person seeks, provides, or assists with the provision of emergency medical care, and because appellant's girlfriend, not appellant, was the one who took such action, appellant is not entitled to immunity.

The issue before this Court is one of statutory interpretation, which involves a question of law that we review *de novo*. *Harris-Solomon v. State*, 442 Md. 254, 265 (2015). As such, we review the scope of CP § 1-210 *de novo*. *See Ballard v. State*, 452 Md. 467, 480 (2017) ("An appellate court reviews without deference a trial court's interpretation of

6

a statute."); *Davis v. Slater*, 383 Md. 599, 604 (2004) (appellate review of Maryland Code

or Rules is *de novo*).

The Court of Appeals has set forth the well-settled rules of statutory construction,

as follows:

> We have long held that "[t]he cardinal rule of statutory interpretation is to ascertain and effectuate the intent of the Legislature." *Williams v. Peninsula Reg'l Med. Ctr.*, 440 Md. 573, 580, 103 A.3d 658, 663 (2014). Our primary goal "is to discern the legislative purpose, the ends to be accomplished, or the evils to be remedied by the statutory provision[.]" *Bd. of Cty. Comm'rs v. Marcas*, *L.L.C.*, 415 Md. 676, 685, 4 A.3d 946, 951 (2010). As we have so often explained, in undertaking this endeavor:

>> [W]e begin with the normal, plain meaning of the language of the statute. If the language of the statute is unambiguous and clearly consistent with the statute's apparent purpose, our inquiry as to legislative intent ends ordinarily and we apply the statute as written, without resort to other rules of construction. We neither add nor delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the statute[.] . . . We, however, do not read statutory language in a vacuum, nor do we confine strictly our interpretation of a statute's plain language to the isolated section alone. Rather, the plain language must be viewed within the context of the statutory scheme to which it belongs, considering the purpose, aim, or policy of the Legislature in enacting the statute. . . .

>> Where words of a statute are ambiguous and subject to more than one reasonable interpretation, or where the words are clear and unambiguous when viewed in isolation, but become ambiguous when read as part of a larger statutory scheme, a court must resolve the ambiguity by searching for legislative intent in other indicia, including the history of the legislation or other relevant sources intrinsic and extrinsic to the legislative process. In resolving ambiguities, a court considers the structure of the statute, how it relates to other laws, its general purpose, and the relative rationality and legal effect of various competing constructions.

>> In every case, the statute must be given reasonable interpretation, not one that is absurd, illogical, or incompatible with common sense.

*Espina v. Jackson*, 442 Md. 311, 321-22 (2015) (quoting *Marcas*, 415 Md. at 685-86).

Maryland is one of 40 states, as well as the District of Columbia, to enact statutes that provide some form of immunity from sanctions for substance abusers who report or experience a medical emergency. *See Drug Overdose Immunity and Good Samaritan Laws,* Nat'l Conference of State Legislatures (June 5, 2017), https://perma.cc/DP8R-49U6. Maryland's statute, CP § 1-210, provides, as follows:

> (a) *In general.* – The act of seeking, providing, or assisting with the provision of medical assistance for another person who is experiencing a medical emergency after ingesting or using alcohol or drugs may be used as a mitigating factor in a criminal prosecution of:
>
> > (1) the person who experienced the medical emergency; or
> > (2) any person who sought, provided, or assisted in the provision of medical assistance.
>
> (b) *Immunity from prosecution – Person assisting.* – A person who, in good faith, seeks, provides, or assists with the provision of medical assistance for a person reasonably believed to be experiencing a medical emergency after ingesting or using alcohol or drugs shall be immune from criminal arrest, charge, or prosecution for a violation of § 5-601, § 5-619, § 5-620, § 10-114, § 10-116, or § 10-117 of the Criminal Law Article if the evidence for the criminal arrest, charge, or prosecution was obtained solely as a result of the person's seeking, providing, or assisting with the provision of medical assistance.
>
> (c) *Immunity from prosecution – Person ingesting or using.* – A person who reasonably believes that the person is experiencing a medical emergency after ingesting or using alcohol or drugs shall be immune from criminal arrest, charge, or prosecution for a violation of § 5-601, § 5-619, § 5-620, § 10-114, § 10-116, or § 10-117 of the Criminal Law Article if the evidence for the criminal arrest, charge, or prosecution was obtained solely as a result of the person seeking or receiving medical assistance.
>
> (d) *Other sanctions prohibited.* – A person who seeks, provides, or assists with the provision of medical assistance in accordance with subsection (b) or (c) of this section may not be sanctioned for a violation of a condition of pretrial release, probation, or parole if the evidence of the

8

violation was obtained solely as a result of the person seeking, providing, or assisting with the provision of medical assistance.

The State focuses solely on the language of CP § 1-210(d), the provision addressing sanctions for a violation of probation. The State asserts that the plain language of § 1-210(d) makes clear that appellant is not entitled to immunity because he "did not seek, provide, or assist with the provision of his emergency medical care." It concedes that, if appellant had reasonably believed that he was suffering from a drug overdose and called 911 seconds before he lost consciousness, he could not have been sanctioned for a violation of probation based on the evidence obtained from the act of seeking assistance. The State asserts, however, that because it was appellant's girlfriend who called 911 after appellant became unconscious, pursuant to the plain language of CP § 1-210, appellant is not entitled to immunity.

Appellant disagrees. He indicates that the language, in context, is ambiguous, stating that, although "the prosecution's strict interpretation of the immunity provision in this case finds some superficial support in the muddled language of the statute," CP § 1-210 "is not a model of clarity." Appellant argues that the State's interpretation of the statute "is fundamentally at odds with the legislative intent as revealed through the statute's history and the bill file, and therefore must be rejected under well-established principles of statutory construction."

We agree with the parties that, at first glance, viewing just the first part of CP § 1-210(d), the language does appear to limit protection to those persons who take active steps to provide medical assistance, i.e., "[a] person who seeks, provides, or assists with the

9

provision of medical assistance," which appellant did not do. Subsection (d), however, refers back to subsection (c) of CP § 1-210, which, as discussed *infra*, provides that the person receiving medical assistance is entitled to protection.

As indicated, there may be situations where the words of a statute appear to be clear when viewed in isolation, but they become ambiguous when read as part of a larger statutory scheme. *Espina,* 442 Md. at 322. In that situation, "a court must resolve the ambiguity by searching for legislative intent in other indicia, including history of the legislation or other relevant sources intrinsic and extrinsic to the legislative process." *Id.* (quoting *Marcas*, 415 Md. at 686)

In *Broadous v. Commonwealth*, 795 S.E.2d 904, 906 (2017), the Court of Appeals of Virginia addressed the meaning of Virginia's statute providing an affirmative defense to prosecution for an individual who "seeks or obtains emergency medical attention for himself, if he is experiencing an overdose, or for another individual." In that case, Broadous' boyfriend called 911 because Broadous was unconscious after taking Fentanyl, a narcotic. *Id*. at 905. Once Broadous was revived, she admitted to the medical personnel that she used what she believed to be heroin. *Id.*

Broadous argued that, although she did not "seek" medical assistance, she "obtained" assistance for an overdose, and therefore, she had an affirmative defense to a charge of possession of a controlled substance. *Id*. at 907. The court disagreed, concluding that the words "seek" and "obtain" were "active verbs that require more than passive receipt of emergency medical attention." *Id.* The court stated:

> The clear purpose of the statute is to provide what amounts to a "safe

10

harbor" from prosecution to encourage the provision of prompt emergency medical treatment to those who have suffered an overdose as a result of ingesting a controlled substance. The General Assembly has obviously made a policy determination that encouraging others, who may themselves be guilty of violating the laws involving controlled substances, to call 911 in an effort to save a life is more important than their prosecution. We therefore hold that pursuant to the plain meaning of the phrase "obtains emergency medical attention for himself," Broadous was required to have actively planned and taken steps to actually gain medical treatment. Simply benefiting from such treatment while unconscious is not sufficient to bring her within the ambit of the affirmative defense provided by Code § 18.2–251.03. Therefore, we hold that the intent of Code § 18.2–251.03 does not provide an affirmative defense to prosecution to an individual who passively receives emergency medical attention.

*Id.*

In so concluding, the court noted that some states had chosen to extend protection to overdose victims who passively received medical assistance, and in that situation, it was "done so expressly." *Id.* at 908. The court noted that Virginia's statute did not do so, "presumably because our legislature made a policy decision not to include it." *Id.* Accordingly, it held that the plain reading of the statute, "in its entirety, provides an affirmative defense only to the individual making the emergency report." *Id.*

Here, by contrast, a review of the statute in its entirety does not lead to the clear conclusion that a person in appellant's situation, who receives assistance for an overdose based on a call for assistance made by another person, is not covered by the statute. The Maryland General Assembly, in contrast to Virginia, made the policy decision in CP § 1-210(c) to extend protections to overdose victims who passively receive medical assistance. *See* CP § 1-210(c) (providing immunity for evidence obtained solely as a result of the person seeking or receiving medical assistance). *See also* CP § 1-210(a) (the act of seeking,

11

providing or assisting with the provision of medical assistance may be used as a mitigating factor in criminal prosecution of the person experiencing the medical condition).[5]

It is not clear why the legislature would give protection from arrest, charge, or prosecution to persons passively receiving medical assistance, but not give those same persons protection from sanctions for a violation of probation. Because our analysis is "'always to seek out the legislative purpose, the general aim or policy, the ends to be accomplished, [or] the evils to be redressed by a particular enactment,'" we must determine the "'meaning of the plainest language' . . . by the context in which it appears," which may entail review of the legislative history. *Rose v. Fox Pool Corp.*, 335 Md. 351, 359-60 (quoting *Morris v. Prince George's Cty.*, 319 Md. 597, 603-04 (1990)). *Accord Espina*,

---

[5] We note that the vast majority of jurisdictions enacting legislation to encourage people to seek medical assistance for drug overdoses provide protection to overdose victims who did not seek help but passively received medical assistance. *See e.g.*, CAL. HEALTH & SAFETY CODE § 11376.5 (b) (2018); COLO. REV. STAT. § 18-1-711 (a) (1) (2018); D.C. CODE § 7-403 (a) (1) (2018); DEL. CODE ANN. tit. 16, § 4769 (b) (2018); FLA. STAT. ANN. § 893.21 (2) (2018); GA. CODE ANN. § 16-13-5 (b) (2018); HAW. REV. STAT. § 329-43.6 (b) (2018); IOWA CODE § 124.418 (1) (d) (2018); KY. REV. STAT. ANN. § 218A.133 (2) (a) (2018); LA. STAT. ANN. § 14.403.10 (B) (2018); MASS. GEN. LAWS ANN. ch. 94C, § 34A (b) (2018); MICH. COMP. LAWS ANN. § 333.7403 (3) (2018); MINN. STAT. ANN. § 604A.05 (Subd. 2) (2018); MISS. CODE ANN. § 41-29-149.1 (3) (b) (2018); MO. ANN. STAT. § 195.205.2 (2018); MONT. CODE ANN. § 50-32-609 (1) (b) (2017); NEB. REV. STAT. ANN. § 28-472 (1) (a) (2018); NEV. REV. STAT. ANN. § 453C.150 (1) (2017); N.H. REV. STAT. ANN. § 318-B:28-b (III) (2018); N.J. STAT. ANN. § 2C:35-30 (a) (2018), § 2C:35-31 (a) (2018); N.M. STAT. ANN. § 30-31-27.1 (B) (2018); N.Y. PENAL LAW § 220.78 (2) (McKinney 2018); OHIO REV. CODE ANN. § 2925.11 (B) (2) (c) (2018); OR. REV. STAT. ANN. § 475B.393 (2) (b) (2018), § 475.898 (2) (2018); 35 PA. STAT. ANN. § 780-113.7 (a) (2018); 21 R.I. GEN. LAWS ANN. § 21-28.8-4 (b) (2018); S.C. CODE ANN. § 44-53-1930 (A) (2018); TENN. CODE ANN. § 63-1-156 (b) (2018); VT. STAT. ANN. tit. 18, § 4254 (c) (2018); WASH. REV. CODE ANN. § 69.50.315 (2) (2018).

442 Md. at 322.

A review of the legislative history makes clear that CP § 1-210 was intended to address the opioid crisis within the State, and its purpose was to save lives by providing immunity from prosecution and other sanctions to encourage people to call for medical assistance when a person is believed to be suffering from an overdose. The statute reflects a shift in the legal system's approach to drug use, and it reflects the General Assembly's determination that encouraging persons to seek medical assistance to save lives was a higher priority than prosecuting those persons for certain, limited, crimes.[6]

The move to encourage people to call for help in the event of a drug overdose began in 2009, when the Maryland General Assembly enacted the precursor to CP § 1-210, which provided that a person's act of seeking medical assistance for another person having a medical emergency after ingesting alcohol or drugs may be used as a mitigating factor in a criminal prosecution. *See* 2009 Md. Laws, ch. 714 (initially codified as Md. Code (2008 Repl. Vol.) § 1-209 of the Criminal Procedure Article). The Fiscal and Policy note accompanying the bill discussed the high increase in drug overdoses and that another state had granted limited immunity to those persons calling 911 in an effort to promote drug overdose reporting. *See* Dep't of Legis. Servs., H.B. 1273 Fiscal & Policy Note, 2009 Reg. Sess. (Md. 2009).

---

[6] Md. Code (2017 Supp.) § 1-210 of the Criminal Procedure Article ("CP") provides immunity only for certain crimes, i.e., possession of controlled dangerous substances and drug paraphernalia and certain crimes relating to underage possession and consumption of alcoholic beverages. The statute would not, however, give immunity for evidence of other crimes, including drug distribution or violent crimes.

13

In 2014, the General Assembly amended the statute to expand its reach. The lead proponent of House Bill 416, Delegate Jon S. Cardin, stated that the burgeoning opioid crisis occurring around the State necessitated legislative action. *See Hearing on H.B. 416 Before the H. Judiciary Comm.*, 2014 Reg. Sess. (Feb. 11, 2014), http://mgahouse.maryland.gov/mga/play/23b1e26f03ef482b9fb5c95b815d968d/?catalog/ 03e481c7-8a42-4438-a7da-93ff74bdaa4c&playfrom=4075318. He noted that accidental deaths are preventable and overdoses are reversible if aid is rendered in timely fashion. *Id.* Delegate Cardin emphasized that the purpose of the legislation, described as a "Good Samaritan bill," was to save lives by providing limited immunity from legal consequences to encourage people to seek medical assistance for persons experiencing an overdose. *Id.* He stressed that the bill was not to be viewed as a "get-out-of-jail free card" or as encouraging drug or alcohol abuse, but as way of ensuring overdose victims are brought to safety without the person seeking help fearing the consequences of arrest or criminal prosecution. *Id.*

The 2014 amendments made the following changes (indicated in bold):

**(a)** The act of seeking**, providing, or assisting with the provision of** medical assistance for another person who is experiencing a medical emergency after ingesting **or using** alcohol or drugs may be used as a mitigating factor in a criminal prosecution.

**(b) A person who, in good faith, seeks, provides, or assists with the provision of medical assistance for a person experiencing a medical emergency after ingesting or using alcohol or drugs shall be immune from criminal prosecution for a violation of §§ 5–601, 5–619, 10–114, 10–116, and 10–117 of the Criminal Law Article if the evidence for the criminal prosecution was obtained solely as a result of the person's seeking, providing, or assisting with the provision of medical assistance.**

14

**(c) A person who experiences a medical emergency after ingesting or using alcohol or drugs shall be immune from criminal prosecution for a violation of §§ 5–601, 5–619, 10–114, 10–116, and 10–117 of the Criminal Law Article if the evidence for the criminal prosecution was obtained solely as a result of another person's seeking medical assistance.**

2014 Md. Laws, ch. 401 (H.B. 416) (Effective date: Oct. 1, 2014). The immunity covered by the 2014 legislation clearly covered, in subsection (c), a person experiencing an overdose when another person called for medical assistance.

The 2015 amendments made the following changes, indicated in bold or strike-through type:

(a) The act of seeking, providing, or assisting with the provision of medical assistance for another person who is experiencing a medical emergency after ingesting or using alcohol or drugs may be used as a mitigating factor in a criminal prosecution **of:**

**(1) the person who experienced the medical emergency; or**

**(2) any person who sought, provided, or assisted in the provision of medical assistance.**

(b) A person who, in good faith, seeks, provides, or assists with the provision of medical assistance for a person **reasonably believed to be** experiencing a medical emergency after ingesting or using alcohol or drugs shall be immune from criminal **arrest, charge, or** prosecution for a violation of §§ 5–601, 5–619, **5–620,** 10–114, 10–116, and 10–117 of the Criminal Law Article if the evidence for the criminal arrest, charge, or prosecution was obtained solely as a result of the person's seeking, providing, or assisting with the provision of medical assistance.

(c) A person who ~~experiences~~ **reasonably believes that the person is experiencing** a medical emergency after ingesting or using alcohol or drugs shall be immune from criminal **arrest, charge, or** prosecution for a violation of §§ 5–601, 5–619, **5–620,** 10–114, 10–116, and 10–117 of the Criminal Law Article if the evidence for the criminal **arrest, charge, or** prosecution was obtained solely as a result of ~~another person's~~ **the person** seeking **or receiving** medical assistance.

15

**(d) A person who seeks, provides, or assists with the provision of medical assistance in accordance with subsection (b) or (c) of this section may not be sanctioned for a violation of a condition of pretrial release, probation, or parole if the evidence of the violation was obtained solely as a result of the person seeking, providing, or assisting with the provision of medical assistance.**

2015 Md. Laws, ch. 375 (S.B. 654) (Effective date: Oct. 1, 2015).

The legislative history indicates that the intent of the 2015 bill was to expand the protection provided under the statute. Specifically, Senator C. Anthony Muse, the sponsor of S.B. 654, stated that it was an expansion of the law with the goal to "save lives." *Hearing on S.B. 654 Before S. Judicial Proceedings Comm.*, 2015 Reg. Sess., (statement of Sen. C. Anthony Muse). With respect to CP § 1-210(d), Senator Muse stated that the bill "extends protection to individuals who are on parole and probation," noting that these individuals "are at much higher risk of overdose." *Id*. He stated that the amending language would "make the law clearer and more inclusive of those who are most likely to witness or experience an overdose." *Id*.

Nothing in the sponsor's statements suggest that a distinction was intended to be made between protections given to a person experiencing a medical emergency in subsection (c) and the protections given to that person in subsection (d). Rather, the statements indicated an expansion of the protections already given in subsections (b) and (c) to individuals on probation or parole, those at "much higher risk of overdose." *Id*.

Indeed, others who wrote in support of the bill interpreted it as extending the immunity previously provided regarding arrest and prosecution to sanctions for violations of probation, including to those experiencing the overdose in a situation where someone

16

else called for medical assistance. For example, the American Civil Liberties Union of Maryland, in written testimony dated March 4, 2015, stated that S.B. 654 extended immunity to violation of probation sanctions to ensure that "both people who are experiencing the medical emergency and those who seek, provide or assist in the provision of medical assistance are covered." *See Bill File to S.B. 654* (2015). The National Council on Alcoholism & Drug Dependence – Maryland also provided written testimony, explaining that it understood "the bill would prohibit a person from having their parole or probation violated . . . because they either called 911 to save someone's life, or was lucky enough to have someone call to save their own life." *Id.*

The legislative history of CP § 1-210 makes clear that the General Assembly's intent in enacting the statute was to save lives by encouraging people to seek medical assistance in the event of a drug overdose. With each bill amending the statute, the legislature sought to extend the protections to reduce concerns that prevented people from calling for help. In the bill enacting CP § 1-210(c), the legislature clearly intended to provide limited immunity from arrest, charge, or prosecution, to a person experiencing an overdose if the evidence was obtained solely as a result of the person receiving medical assistance. Nothing in the legislative history suggested that the legislature intended a different type of immunity for a sanction for a violation of probation. *See In re Nancy H.*, 197 Md. App. 419, 427 (2011) (declining to adopt interpretation of statute inconsistent with general purpose of law where no such intent existed in legislative purpose). Indeed, the legislative history indicates an extension of the protections provided in CP § 1-210(c) to people facing sanctions for a violation of probation.

To hold that a person is not entitled to the protections of the statute because someone else called for medical assistance after the person overdosed is inconsistent with the General Assembly's stated goal of saving lives by encouraging people to call for help. The legislative history reflects that one of the concerns expressed in support of the legislation was that people may not call for help because they do not want the person who overdosed to get in legal trouble. *See* Mar. 4, 2015, Statement of Pamela Kasemeyer, et al., Hearing on S.B. 654, S. Judicial Proceedings Comm., 2015 Reg. Sess. ("[F]ear of prosecution of the victim and/or the witness for drug offenses often kept witnesses from seeking medical care.").

Based on our review of the statutory scheme and the legislative history, we hold that, pursuant to CP § 1-210(d), a person may not be sanctioned for a violation of probation if evidence of the violation was obtained solely as a result of a person seeking, providing, or assisting with the provision of medical assistance. As in CP § 1-210(c), it is not required that the person experiencing the medical emergency be the one to call for help.

We note that, after oral argument in this case, legislation was introduced that would have revised CP § 1-210(c) to: (1) specify that immunity was for a person who is experiencing a medical emergency, as opposed to the current language, which is a person who reasonably believes that the person is experiencing a medical emergency; and (2) clarify that the prohibition against sanctioning a person for a violation of probation applies to a person "who is experiencing a medical emergency in accordance with subsection (c)." *See* Dep't of Legis. Servs., S.B. 625 Fiscal & Policy Note First Reader, 2018 Reg. Sess.,

18

https://perma.cc/LN34-3K9K (Md. 2018).  This proposed legislation was not enacted, but that does not change our conclusion in this case.[7]

"'[L]egislative rejection [of a bill] is not an infallible indicator of legislative intent.'" *City of Baltimore Dev. Corp. v. Carmel Realty Assocs.*, 395 Md. 299, 329 (2006) (quoting *Andy's Ice Cream, Inc. v. City of Salisbury*, 125 Md. App. 125, 154 (1999)).  That is because there are "a myriad of reasons" that a bill can fail.  *Antonio v. SSA Sec., Inc.,* 442 Md. 67, 87 (2015).  For example, here, the legislature may have determined that CP § 1-210(d) already covered the person experiencing the emergency, in accordance with subsection (c), and therefore, the suggested language was not necessary.   As the Court of Appeals has explained, "'that a bill on a specific subject fails of passage in the General Assembly is a rather weak reed upon which to lean in ascertaining legislative intent.'" *Carmel Realty Assocs.,* 395 Md. at 329 (quoting *Auto. Trade Ass'n v. Ins. Comm'r*, 292 Md. 15, 24 (1981)).  That S.B. 625 did not pass the Senate during the 2018 legislative session does change our analysis here.

Here, evidence of drug use was obtained solely as a result of appellant's girlfriend calling 911, and therefore, appellant was entitled to immunity pursuant to CP § 1-210(d). Accordingly, the circuit court erred in sanctioning appellant based on its finding that appellant violated his probation by failing to abstain from illegal substances.

---

[7] Although H.B. 799, the companion bill, was passed by the House of Delegates, S.B. 625, was not voted on by the Senate prior to the adjournment of the legislative session. *See S.B. 625,* General Assembly of Maryland, https://perma.cc/2G24-BYFB (last visited July 12, 2018).

19

To be sure, the court also found that appellant violated his probation in other ways, i.e., by failing to report to his agent and failing to complete alcohol and drug treatment. Appellant does not challenge the court's findings in this regard. As appellant notes, however, where a finding of a violation of probation is improperly used as a basis to revoke probation, the remedy is to vacate the order of revocation and remand for further proceedings to determine if revocation is warranted based on the violation of the other conditions of probation. *Hammonds v. State*, 436 Md. 22, 52 (2013). We shall follow that procedure here.

**JUDGMENT OF THE CIRCUIT COURT FOR CAROLINE COUNTY VACATED. CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY CAROLINE COUNTY.**