*Christopher Glanden v. State of Maryland*, Nos. 1114, 1871, 1872, & 1873, September Term, 2019.

**SEARCHES AND SEIZURES – IN GENERAL – PLAIN VIEW FROM LAWFUL VANTAGE POINT**

Suppression court did not err in denying appellant's motion to suppress drugs found on his person, where the drugs were in plain view of a police officer. At the time the drugs were found, the officer was in a lawful vantage point, the incriminating character of the drugs was immediately apparent, and the officer had a lawful right of access to the drugs.

**CONTROLLED SUBSTANCES – OFFENSES – DEFENSES – MEDICAL NECESSITY OR ASSISTANCE**

Section 1-210(d) of the Criminal Procedure Article ("CP") of the Maryland Code did not immunize appellant from sanctions for violations of his probation resulting from his conviction for possession with intent to distribute fentanyl. Although the statute prohibits an individual from being sanctioned for a violation of probation if the evidence of the violation was obtained solely as a result of the person seeking medical assistance for a drug overdose, such evidence did not serve as the "sole" basis for the violations of probation in appellant's case. In finding that appellant had violated his probation, the court did not consider the facts underlying the conviction; instead, the court relied on a certified copy of the conviction. Moreover, possession with intent to distribute fentanyl is not one of the enumerated crimes for which an individual is provided immunity from prosecution under CP 1-210(b) and (c). Because the protections provided by CP § 1-210(d) were intended as an extension of the protections provided by CP § 1-210(c), allowing appellant to receive the benefits of CP 1-210(d) for a crime that the legislature expressly excluded from CP 1-210(b) would be contrary to the legislature's intent.

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

Nos. 1114, 1871, 1872, & 1873

September Term, 2019

_____

CHRISTOPHER ERIC GLANDEN

v.

STATE OF MARYLAND

_____

Shaw Geter,
Gould,
Sharer, J. Frederick
    (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Shaw Geter, J.

_____

Filed:  February 5, 2021

 Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

This appeal arises from a finding by the Circuit Court for Caroline County that appellant, Christopher Glanden, was in violation of probation as a result of his conviction for possession with intent to distribute fentanyl, while under the supervision of the court. The underlying circumstances of Glanden's fentanyl conviction involved a 911 call placed by his mother, seeking medical assistance for him because of an apparent drug overdose. Glanden argues that Section 1-210 of the Criminal Procedure Article ("CP") of the Maryland Code immunizes him from prosecution.

In 2017, Glanden was charged by criminal information with possession with intent to distribute fentanyl. Prior to trial, he filed a motion to suppress, which the court denied without a hearing. A jury later convicted him, and he was sentenced to a term of 35 years' imprisonment, with all but 25 years suspended. Glanden timely appealed his conviction and while his appeal was pending, Glanden was found to be in violation of probation in three unrelated cases, because of the conviction. He filed an application for leave to appeal in each of those cases. This Court granted the applications and consolidated the appeals with Glanden's direct appeal of his conviction.

In his direct appeal, this Court held that the circuit court erred in not holding a hearing before denying his motion to suppress. *Glanden v. State*, No. 1956, September Term 2017, 2019 WL 1306341 (Md. Ct. Spec. App. March 21, 2019). We remanded for a new suppression hearing and on remand, the circuit court held a suppression hearing. Following the hearing, the circuit court denied Glanden's motion and reaffirmed its findings as to the violations of probation. Glanden noted an appeal in each case, and this Court consolidated all four appeals into the instant appeal.

Appellant presents two questions for our review:

1. Did the circuit court err in denying the motion to suppress?

2. Does Section 1-210 of the Criminal Procedure Article of the Maryland Code immunize Glanden from sanctions for violations of probation resulting from his conviction for possession with intent to distribute fentanyl?

For reasons to follow, we hold that the circuit court did not err in denying the motion to suppress. We also hold that CP § 1-210 does not immunize Glanden from sanctions for violating his probation. We affirm the judgments of the court.

## BACKGROUND

In July of 2016, Glanden was arrested and charged with possession with intent to distribute CDS from an incident where his mother called 911 seeking medical assistance for his suspected drug overdose. A total of 152 wax bags, weighing approximately 44 grams, were found in Glanden's possession that evening. The results of testing came back positive for fentanyl. As noted, prior to trial, Glanden filed a motion to suppress the drugs found in his possession and the circuit court denied the motion without holding an evidentiary hearing. Glanden was ultimately convicted of possession with intent to distribute fentanyl. He timely filed an appeal.

### *Violations of Probation*

While the appeal was pending, Glanden was charged with violating his probation in three other criminal cases. At the hearing that followed, the State alleged that, in each of the three criminal cases, Glanden had violated certain conditions of his probation, namely, that he obey all laws, that he abstain from possessing, using, or selling a controlled

2

dangerous substance, and that he totally abstain from alcohol, illegal substances, and abuse of prescription drugs. As evidence of those violations, the State presented a certified copy of Glanden's conviction of possession with intent to distribute fentanyl.

Before the circuit court accepted the certified conviction into evidence, Glanden moved to exclude the conviction from the court's consideration. He argued that the conviction could not serve as the basis for a finding that he violated his probation because such a finding was prohibited by Maryland's "Good Samaritan" statute. According to Glanden, the statute precludes an individual from being sanctioned for a violation of probation if the evidence of the violation was obtained as a result of the individual having sought or received medical assistance after an apparent drug overdose.

The circuit court denied the motion and accepted the certified copy of his conviction into evidence. The court later found that, in each of the three cases, Glanden had violated his probation as a result of his conviction for possession with intent to distribute fentanyl. Glanden noted an appeal of all three judgments. Those appeals were later consolidated into his then-pending direct appeal of his conviction for possession with intent to distribute fentanyl.

### First Appeal

In an unreported opinion, this Court held that the circuit court erred in not conducting a hearing on Glanden's motion to suppress. *Glanden v. State*, 2019 WL 1306341. We remanded the case with instructions that the court hold a suppression hearing. *Id.* at 1–2. We explained: "If the circuit court grants the motion to suppress, then the prior judgment must be vacated and a new trial ordered. On the other hand, if the circuit

3

court denies the motion to suppress, the prior judgment is affirmed." *Id.* at 2. We added: "At least for now, this means there is no evidentiary support for the finding that Glanden violated his probation. Therefore, as to the violations of probation too, we remand without affirmance or reversal."[1] *Id.* at 5–6.

### *Suppression Hearing*

On remand, the circuit court held a suppression hearing. Sergeant Brian McNeill of the Federalsburg Police Department testified that, on July 29, 2016, he responded to the home of Eva Eason, Glanden's mother, after receiving a call for a possible cardiac arrest. Upon arriving at the home, Sergeant McNeill spoke to Ms. Eason, who reported that her son had suffered a possible overdose. Sergeant McNeill then entered a bedroom, where he encountered Glanden, who was "standing upright at the time" and was "conscious and alert."

Sergeant McNeill testified that, upon entering the bedroom, he observed "two tennis shoes" on the floor and that Glanden was standing barefoot next to the tennis shoes. Sergeant McNeill then observed that inside one of the tennis shoes there appeared to be a "bundle" of suspected heroin packets that had been "manicured and banded together with a rubber band." Surrounding the bundle were "multiple loose wax-fold packets" of suspected heroin. Sergeant McNeill testified that he did not manipulate the shoes in order to see the suspected drugs.

---

[1] Although we discussed Glanden's claims in greater detail via a footnote, we did not resolve any of the issues he raised regarding the violation of probation orders.

After having a brief conversation with Glanden, Sergeant McNeill watched him "put the tennis shoes on in an effort to conceal the . . . heroin packets." He then walked with Glanden to the living room, at which point the officer "asked for a pair of boots to be gathered" for Glanden to wear. Once the boots were obtained, Glanden took off the tennis shoes and placed the boots on his feet. Sergeant McNeill then secured the tennis shoes containing the suspected heroin and relayed that information over his police radio.

Federalsburg Police Officer Michael Stivers testified that he also responded to the Eason home on July 29, 2016. Officer Stivers testified that he was responsible for escorting Glanden outside to an awaiting ambulance shortly after Glanden's initial interaction with Sergeant McNeill. After he and Glandon reached the ambulance, Officer Stivers asked him to "face the back door of the ambulance" so that he could "check him for any kind of weapons before he got in the ambulance." As he was standing directly behind Glanden, he observed "a very big bulge inside the pocket" of Glanden's shorts. Officer Stivers testified that the pocket was "bulged open" and that he could "see some white baggies, which turned out to be waxfolds." Officer Stivers stated he then reached into Glanden's pocket and "retrieved the suspected CDS." Prior to the search, he had been informed "that there was CDS in plain view" and that "CDS had already been found on or near Mr. Glanden."

On cross-examination, defense counsel asked Officer Stivers about a report he had authored following the incident, which defense counsel claimed was inconsistent with his trial testimony. Defense counsel also questioned Officer Stivers about the circumstances surrounding his observations, including whether Glanden was under arrest at the time and whether Officer Stivers conducted a "pat-down" or "felt the bulge" in Glanden's pocket.

5

Officer Stivers testified that Glanden was not under arrest but rather was in "investigative detention" because the officers "had no clue what was going on yet." Officer Stivers also testified that he did not conduct a pat-down or "feel the bulge;" instead, he "just reached into the pocket and grabbed the bulge." Officer Stivers added that he seized the bulge because Glanden's pocket was "open" and "white wax folds" of "suspected heroin" could be seen inside the pocket.

At the conclusion of the suppression hearing, the circuit court found that both officers had sufficient probable cause to conduct a warrantless search of Glanden's person and property. The court stated that, when Sergeant McNeill went into Glanden's bedroom, "he found [Glanden] standing and tennis shoes with waxed envelopes typically used in heroin distribution." The court stated further that, when Officer Stivers was standing behind Glanden near the rear of the ambulance, "he could look in the pocket, see a bulge and see wax papered folds commonly known to be used by people who sell, distribute, or keep heroin or fentanyl or that type of drug." Based on those findings, the court denied Glanden's motion to suppress.

### Violations of Probation

At the conclusion of the suppression hearing, Glanden renewed his argument that the circuit court erred in finding that he had violated his probation based on his conviction of possession with intent to distribute fentanyl. The court ultimately ruled that, because the motion to suppress had been denied, "the three violations of probation on a conviction for possession of fentanyl with the intent to distribute stand." This appeal followed.

6

**I.**

Glanden first contends that the circuit court erred in denying his motion to suppress the drugs seized from his person by Officer Stivers.[2] Glanden argues that Officer Stivers did not have probable cause to arrest and search him based on the suspected CDS found by Sergeant McNeill in the tennis shoe. Glanden also argues that Officer Stivers did not have reasonable articulable suspicion to frisk him for weapons. Finally, he argues "the evidence did not support a finding that the drugs seized from [his] right front shorts' pocket were in plain view." Conversely, the State contends the seizure was justified by the "plain view" doctrine.

"In reviewing the denial of a motion to suppress evidence under the Fourth Amendment, we look only to the record of the suppression hearing and do not consider any evidence adduced at trial." *Daniels v. State*, 172 Md. App. 75, 87 (2006). In so doing, "we view the evidence presented at the [suppression] hearing, along with any reasonable inferences drawable therefrom, in a light most favorable to the prevailing party." *Davis v. State*, 426 Md. 211, 219 (2012). "We accept the trial court's factual findings unless they are clearly erroneous, but we review *de novo* the court's application of the law to its findings of fact." *Pacheco v. State*, 465 Md. 311, 319 (2019) (citations and quotations omitted). "When a party raises a constitutional challenge to a search or seizure, this Court renders an independent constitutional evaluation by reviewing the relevant law and

---

[2] Glanden does not challenge Sergeant McNeill's seizure of the drugs found in his tennis shoe.

applying it to the unique facts and circumstances of the case." *Id.* at 319–20 (citations and quotations omitted).

"The Fourth Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment, prohibits unreasonable searches and seizures." *Redmond v. State*, 213 Md. App. 163, 177–78 (2013) (quotations and footnote omitted). "Although warrantless searches and seizures are presumptively unreasonable, they may be deemed reasonable if the circumstances fall within a few specifically established and well-delineated exceptions." *Pacheco*, 465 Md. at 320–21 (citations and quotations omitted).

One such exception is the plain view doctrine, which "permits a police officer to seize an item in plain view when the officer has probable cause to believe that the item is contraband or evidence of a crime." *Peters v. State*, 224 Md. App. 306, 352 (2015). For the plain view doctrine to be applicable: "(1) the police officer's initial intrusion must be lawful[;] (2) the incriminating character of the evidence must be immediately apparent; and (3) the officer must have a lawful right of access to the object itself." *Sinclair v. State*, 444 Md. 16, 42 (2015) (citations and quotations omitted).

"For the incriminating character of an item to be immediately apparent, the officer, upon seeing the item, must have probable cause to believe that the item in question is evidence of a crime or is contraband." *McCracken v. State*, 429 Md. 507, 516 (2012) (citations and quotations omitted). "Probable cause . . . requires that the facts available to the officer would warrant a man of reasonable caution in the belief that certain items may be contraband or stolen property or useful as evidence of a crime[.]" *Wengert v. State*, 364 Md. 76, 90 (2001) (citations and quotations omitted). "Probable cause is to be determined

8

based upon evaluation of facts, viewed from the standpoint of an objectively reasonable police officer, and not on the officer's actual state of mind at the time the challenged action was taken." *Id.* at 90–91 (citations and quotations omitted).

We hold that Officer Stivers' seizure of the drugs in Glanden's pocket was reasonable under the plain view doctrine and thus did not violate his Fourth Amendment rights. Officer Stivers testified that he was standing directly behind Glanden, who was facing away from the him, when he observed the drugs in Glanden's pocket. Officer Stivers testified that one of Glanden's pockets was "bulged open" and that the officer could see "white wax folds" of "suspected heroin" inside of the pocket. Under these circumstances, Officer Stivers was justified in seizing the wax folds in Glanden's pocket, as the officer had probable cause to believe that the items, plainly seen, were contraband or evidence of illegal activity.

During the suppression hearing, Officer Stivers was cross examined regarding alleged inconsistencies between his incident report and his testimony. Glanden argues that Officer Stivers' testimony was "entirely implausible" and at times contradictory to his incident report. The circuit court, however, found otherwise, crediting Officer Stivers' testimony that he "could look in the pocket" and "see wax papered folds." On review, we give deference to a "judge's superior opportunity to evaluate [the] credibility and weigh the evidence." *Grimm v. State*, 232 Md. App. 382, 403–04 (2017), *aff'd*, 458 Md. 602 (2018). We, thus, accept the court's finding was not clearly erroneous as the testimony's implausibility was for the court to decide. *See Small v. State*, 464 Md. 68, 88 (2019) ("Findings cannot be clearly erroneous if there is any competent material evidence to

9

support the factual findings of the trial court.") (citations and quotations omitted); *see also State v. Brooks*, 148 Md. App. 374, 399 (2002) ("The concern is not with the frailty or improbability of the evidentiary base, but with the bedrock non-existence of an evidentiary base.").

Glanden argues, alternatively, that the seizure was unreasonable because it occurred during an "unlawful pat-down." Again, we note that the court credited Officer Stivers' testimony that he did not conduct a pat-down but rather was preparing to conduct the pat-down when he observed the drugs in plain view. Once Officer Stivers made that observation, his seizure was supported by probable cause of Glanden's criminal activity. *See Swift v. State*, 393 Md. 139, 150 (2006) (noting that a police officer may briefly detain an individual for investigatory purposes "without violating the Fourth Amendment as long as the officer has a reasonable, articulable suspicion of criminal activity").

In sum, the three requirements of the plain view doctrine were satisfied. Officer Stivers' initial intrusion was lawful, the incriminating character of the contraband was immediately apparent, and the officer had a lawful right of access to the contraband. Accordingly, the circuit court did not err in denying the motion to suppress.

## II.

Next, Glanden claims that he should not have been sanctioned for violating his probation based on his conviction for possession with intent to distribute fentanyl. He argues that the penalty was prohibited by CP § 1-210(d), which precludes an individual seeking medical assistance for an apparent drug overdose from being sanctioned for a violation of probation "if the evidence of the violation was obtained solely as a result of

10

the person seeking, providing, or assisting with the provision of medical assistance." Conversely, the State contends that Glanden's violations were based on his conviction and not that he sought medical assistance, thus, CP § 1-210 is inapplicable.

"'The cardinal rule of statutory interpretation is to ascertain and effectuate the intent of the Legislature.'" *Noble v. State*, 238 Md. App. 153, 161 (2018) (quoting *Williams v. Peninsula Reg'l Med. Ctr.*, 440 Md. 573, 580 (2014)). "The starting point of any statutory analysis is the plain language of the statute, viewed in the context of the statutory scheme to which it belongs." *Kranz v. State*, 459 Md. 456, 474 (2018) (citations and quotations omitted). "If the language of the statute is unambiguous and clearly consistent with the statute's apparent purpose, our inquiry as to legislative intent ends ordinarily and we apply the statute as written, without resort to other rules of construction." *Noble*, 238 Md. App. at 161 (citing *Espina v. Jackson*, 442 Md. 311, 321–22 (2015)). If, on the other hand, words of a statute are ambiguous, either in isolation or when read as part of a larger statutory scheme, "a court must resolve the ambiguity by searching for legislative intent in other indicia, including the history of the legislation or other relevant sources intrinsic and extrinsic to the legislative process." *Id.* at 162 (citation omitted). Ultimately, the underlying purpose of statutory construction is to ascertain and effectuate legislative intent. *See Schlick v. State*, 238 Md. App. 681, 692 (2018).

The statute at issue here is CP § 1-210, which states, in pertinent part:

**Persons seeking, providing, or assisting with provision of medical assistance**

(b) A person who, in good faith, seeks, provides, or assists with the provision of medical assistance for a person reasonably believed to be experiencing a

medical emergency after ingesting or using alcohol or drugs shall be immune from criminal arrest, charge, or prosecution for a violation of § 5-601, §5-619, § 5-620, § 10-114, § 10-116, or § 10-117 of the Criminal Law Article if the evidence for the criminal arrest, charge, or prosecution was obtained solely as a result of the person's seeking, providing, or assisting with the provision of medical assistance.

**Persons reasonably believed to be experiencing medical emergency after ingesting or using alcohol or drugs**

(c) A person who reasonably believes that the person is experiencing a medical emergency after ingesting or using alcohol or drugs shall be immune from criminal arrest, charge or prosecution for a violation of § 5-601, §5-619, § 5-620, § 10-114, § 10-116, or § 10-117 of the Criminal Law Article if the evidence for the criminal arrest, charge, or prosecution was obtained solely as a result of the person seeking or receiving medical assistance.

**Sanction solely for violation of pretrial release, probation, or parole condition prohibited**

(d) A person who seeks, provides, or assists with the provision of medical assistance in accordance with subsection (b) or (c) of this section may not be sanctioned for a violation of a condition of pretrial release, probation, or parole if the evidence of the violation was obtained solely as a result of the person seeking, providing, or assisting with the provision of medical assistance.

CP § 1-210.

We observe, initially, that the crime for which Glanden was convicted—possession with intent to distribute fentanyl—is proscribed by § 5-602 of the Criminal Law Article ("CL") of the Maryland Code, and is not one of the enumerated crimes for which an individual is provided immunity from prosecution under CP 1-210(b) and (c). CP §§ 1-210(b) and (c); *see also Noble*, 238 Md. App. at 167 n.6 (noting that, although CP § 1-210 provides immunity for certain enumerated crimes, the statute does not "give immunity for evidence of other crimes, *including drug distribution* or violent crimes") (emphasis added).

12

We note further that the plain language of the statute requires that the provision of medical assistance be "in accordance with subsection (b) or (c) of this section[.]" CP § 1-210(d). The phrase "in accordance" modifies the clause that precedes it—"A person who seeks, provides, or assists with the provision of medical assistance." Thus, "in accordance" in (d) is aligned with the immunity that attaches in (b) and (c).

Neither this Court nor the Court of Appeals has examined the applicability of CP § 1-210 under circumstances akin to those presented here, however, this Court has considered whether the immunity from sanctions for probation violations conferred by CP § 1-210 extends to overdose victims who had not personally sought medical assistance. *Noble*, 238 Md. App. at 156–57. In *Noble v. State*, the defendant was found unresponsive in his bathroom by paramedics who were answering a 911 call placed by his girlfriend. *Id.* at 157–59. Upon being revived by the paramedics, Noble initially stated that he had taken Benadryl; however, he later admitted that he had taken some prescription pain medication. *Id.* at 157–58. Shortly thereafter, Noble was charged with violating several conditions of his probation, including that he abstain from illegal substances and abusive use of prescription drugs. *Id.* at 158. He subsequently filed a motion to dismiss, claiming that CP § 1-210 granted him immunity. *Id.* At the hearing that followed, the State argued that CP § 1-210 did not apply because Noble's girlfriend was the one who had called 911. *Id.* at 159. The circuit court agreed with the State and denied Noble's motion to dismiss. *Id.* The court later found that Noble had violated his probation because of the overdose. *Id.* at 160.

On appeal to this Court, we held that the circuit court erred in finding that Noble had violated his probation. *Id.* at 173. We found that, although the language of Subsection (d) appeared to protect only those persons who actively sought medical assistance during an overdose, the statute, when viewed in its entirety, was ambiguous as to whether it protected someone like Noble, *i.e.*, someone who received medical assistance for an overdose based on a call made by another person. *Id.* at 164–66.

To resolve that ambiguity, we looked to the legislative history of CP § 1-210. *Id.* at 167. We explained that "CP § 1-210 was intended to address the opioid crisis within the State, and its purpose was to save lives by providing immunity from prosecution and other sanctions to encourage people to call for medical assistance when a person is believed to be suffering from an overdose." *Id.* We stated that the statute reflected "a shift in the legal system's approach to drug use, and it reflect[ed] the General Assembly's determination that encouraging persons to seek medical assistance to save lives was a higher priority than prosecuting those persons for certain, limited, crimes." *Id.* (footnote omitted).

We noted that, when the statute was originally enacted in 2009, it merely provided that "a person's act of seeking medical assistance for another person having a medical emergency after ingesting alcohol or drugs may be used as a mitigating factor in a criminal prosecution." *Id.* at 167–68. In 2014, the General Assembly amended the statute to include, in substantially similar form, the current Subsections (b) and (c). *Id.* at 168–69. The purpose of that addition was to expand the statute's reach and "to save lives by providing limited immunity from legal consequences to encourage people to seek medical assistance for persons experiencing an overdose." *Id.* at 168. Based on those changes, we

14

concluded that "[t]he immunity covered by the 2014 legislation clearly covered, in Subsection (c), a person experiencing an overdose when another person called for medical assistance." *Id.* at 169. The statute was amended again in 2015, this time adding Subsection (d) in its current form. *Id.* at 169–70. The purpose of that amendment was to "make the law clearer and more inclusive of those who are most likely to witness or experience an overdose." *Id.* at 170. The addition of Subsection (d) "indicated an expansion of the protections already given in Subsections (b) and (c) to individuals on probation or parole[.]" *Id.* at 171.

Based on the overall legislative history, we concluded that "the General Assembly's intent in enacting [CP § 1-210] was to save lives by encouraging people to seek medical assistance in the event of a drug overdose." *Id.* In enacting Subsection (c), "the legislature clearly intended to provide limited immunity from arrest, charge, or prosecution, to a person experiencing an overdose if the evidence was obtained solely as a result of the person receiving medical assistance." *Id.* We added that "[n]othing in the legislative history suggested that the legislature intended a different type of immunity for a sanction for a violation of probation;" rather, "the legislative history indicates an extension of the protections provided in CP § 1-210(c) to people facing sanctions for a violation of probation." *Id.* at 171–72. Therefore, we held, "a person may not be sanctioned for a violation of probation if evidence of the violation was obtained solely as a result of a person seeking, providing, or assisting with the provision of medical assistance." *Id.* at 172.

Turning back to the present case, it appears that the statutory scheme is similarly ambiguous as to whether someone in Glanden's position would be protected. On the one

15

hand, there is little question that Glanden, as the recipient of emergency medical services following a suspected overdose, is the type of person CP § 1-210 was designed to protect. Our focus, however, is whether the legislature intended the statute to apply when an individual, such as Glanden, has been found to be in violation of his probation based on a felony criminal conviction that stemmed from receiving medical assistance for an apparent overdose.

We hold, based on our review of the statute's legislative history and our discussion of the same in *Noble*, that Glanden was not entitled to the protections provided by CP § 1-210(d). As argued by the State, the statute clearly states that a person "may not be sanctioned for a violation of a condition or pretrial release, probation, or parole if the evidence of the violation was obtained *solely* as a result of the person seeking, providing, or assisting with the provision of medical assistance." CP § 1-210(d) (emphasis added). To be sure, under the facts presented here, Glanden probably would not have been convicted had the 911 call not been placed. However, the evidence of his violation was his actual conviction for the violation of a statute to which the protections of subsections (b) and (c) expressly do not apply. Here, unlike in *Noble*, Glanden was not found to be in violation of his probation *solely* as a result of his treatment for an overdose.

We note this case is somewhat unusual in that the same judge presided over both the trial and VOP proceedings. However, in examining the record of the VOP hearing, we found that the circuit court did not consider anything other than the conviction. The court did not delve into the factual circumstances underlying the conviction, but instead relied on the certified copy of the felony conviction. We find nothing in the statute's legislative

16

history or the relevant case law that would require a court, in a VOP hearing, to conduct an inquiry or mini trial to determine the facts underlying a felony conviction. There is further nothing to suggest that a court is barred from sanctioning a probationer simply because the circumstances that led to the conviction involved the administration of medical services pursuant to an apparent overdose.

In sum, we hold, the evidence of the probation violations was not obtained "solely" because Glanden received medical assistance pursuant to an apparent overdose. Rather, the evidence of the violations came from the fact that he was convicted of possession with intent to distribute fentanyl. That crime was expressly excluded from the list of crimes for which an individual is granted limited immunity under CP § 1-210(c). In our view, the protections provided by CP § 1-210(d) were intended as an extension of the protections provided by CP § 1-210(c) and were not intended to broaden protection to felonies and violent crimes. Based on the statute's legislative history and the relevant case law, we find it unlikely that the General Assembly would require immunity be given to an individual convicted of a crime not specifically enumerated in the statute in a subsequent violation of probation finding. Accordingly, the circuit court did not err in finding that Glanden violated his probation.

**JUDGMENTS OF THE CIRCUIT COURT FOR CAROLINE COUNTY AFFIRMED; COSTS TO BE PAID BY APPELLANT.**