*Damian Gerety v. State of Maryland*, No. 2349, September Term, 2019; *Briana Antkowiak v. State of Maryland*, No. 2365, September Term, 2019. Opinion by Nazarian, J.

**CRIMINAL PROCEDURE – CONTROLLED SUBSTANCES – DEFENSES – MEDICAL NECESSITY OR ASSISTANCE**

People who possessed and used heroin in a vehicle parked in a public parking lot were immune from prosecution charges for simple possession of heroin under Maryland's Good Samaritan Law, (2018 Repl. Vol.), § 1-210(c) of the Criminal Procedure Article ("CP") because the police were present at the scene, and discovered them and the drugs, solely as a result of a 911 call by a passer-by.

**CRIMINAL PROCEDURE – CONTROLLED SUBSTANCES – DEFENSES – ATTENUATION**

Immunity from prosecution under CP § 1-210(c) is not attenuated or otherwise eliminated by the fact that the person possessing heroin had outstanding warrants that were discovered during the encounter with police.

Circuit Court for Anne Arundel County
Case Nos. C-02-CR-19-002625 & C-02-CR-19-02623

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

Nos. 2349 & 2365

September Term, 2019

_____

DAMIAN GERETY

v.

STATE OF MARYLAND

_____

BRIANA ANTKOWIAK

v.

STATE OF MARYLAND

_____

Kehoe,
Nazarian,
Eyler, James R.
        (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Nazarian, J.

_____

Filed: February 24, 2021

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

This case probes the boundaries of the immunity provisions of Maryland's Good Samaritan Law, Maryland Code (2002, 2018 Repl. Vol.), § 1-210 of the Criminal Procedure Article ("CP"). That statute grants immunity from arrest, charge, and prosecution for certain drug and alcohol related crimes, and for sanctions flowing from those crimes, when the evidence supporting the charges is obtained "solely as a result" of a person seeking or receiving medical assistance for a suspected drug or alcohol overdose.

In cases consolidated in the Circuit Court for Anne Arundel County, Damian Gerety and Briana Antkowiak each pleaded not guilty on an agreed statement of facts to one such crime—possession of heroin—then moved for judgment of acquittal, arguing that they were immune from prosecution for the charges because the drug evidence was seized "solely as a result of" a call for medical assistance made by a bystander. *See* CP § 1-210(c). The circuit court denied the motions, convicted each of the single charge, and sentenced each to time served. We hold that because the police were present at the scene and discovered the evidence supporting the charges "solely as a result" of a call for medical assistance, Mr. Gerety and Ms. Antkowiak were immune from prosecution, and we reverse the convictions.

## I.   BACKGROUND

### A.   The 911 Call

On October 23, 2019, around 6:30 p.m., a man identifying himself only as Charles called 911 from the parking lot of a Dunkin Donuts on Camp Meade Road in Linthicum Heights. The dispatcher asked if he needed "police, fire, or ambulance" and he

responded, "I was trying to get a police car." He then told the dispatcher that a man and a woman were inside a parked SUV and appeared to be "either sleeping or they are really highed out."[1] He provided the make and model of the vehicle, as well as the license plate number. In response, the dispatcher said, "let me get the paramedics on the line." Charles told the paramedics, "I don't know if they're just sleeping, or–or they're really high–you know, really high." At the end of the call, he said, "I'm pretty sure they're okay; you know what I mean?" He added, "I don't want to knock on their window and frighten them." He asked if he needed to stay at the scene and the dispatcher told him he was free to go.

B.     The Police and Medical Response

Anne Arundel County Police Officer Sam Silva responded to the Dunkin Donuts for a "report of a check a sick or injured subject." Emergency medical technicians from the fire department were on the scene already. An EMT advised Officer Silva that the SUV was no longer in the parking lot, but believed it had moved to a parking lot across the street, the lot serving a Checkers restaurant.

Officer Silva responded to that location while the medics remained behind. He discovered two people, later identified as Mr. Gerety and Ms. Antkowiak, in the front seats of an SUV. Mr. Gerety was in the driver's seat. Both were "nodding out," which Officer Silva knew to be "a symptom of recent drug use." He knocked on the passenger

---

[1] The transcript from the hearing mistakenly quotes the caller as stating that the couple was "either *tripping*, or they are really highed out." (Emphasis added.)

window[2] and Ms. Antkowiak lowered it. Officer Silva asked if they needed medical assistance and both parties responded "No." Officer Silva explained that he was there because a citizen reported that they were "passed out in their vehicle" and "was concerned for their wellbeing." Mr. Gerety "continued to nod in and out," causing Officer Silva to ask him again if he was all right. Mr. Gerety responded "Yeah, I'm good."

Officer Silva asked both occupants of the vehicle for identification. Mr. Gerety lit a cigarette and "appeared nervous as he fidgeted through his center console, looking for his driver's license." Ms. Antkowiak claimed that she was seventeen years old and did not have any identification.[3] She provided a false name and date of birth, slurred her words as she spoke, and "continuously nodded in and out." Mr. Gerety provided his real name and date of birth, but said that he did not have his identification with him.

Officer Silva asked Mr. Gerety if there were any illegal items in his vehicle. Mr. Gerety responded "No." Officer Silva asked for consent to search the vehicle. Mr. Gerety "appeared nervous, and in a slurred voice said, 'I don't think so; this isn't my car.'"

Two other officers monitored the vehicle while Officer Silva ran Mr. Gerety's name (and the false name provided by Ms. Antkowiak) through computer databases. He discovered that Mr. Gerety had "outstanding warrants" for his arrest. Officer Silva returned to the vehicle, directed Mr. Gerety to step out, and placed him under arrest.

---

[2] The SUV was parked too close to an adjacent vehicle for Officer Silva to approach the driver's side.

[3] Ms. Antkowiak was almost twenty-one years old.

Before Mr. Gerety complied with Officer Silva's command, "he was observed to be reaching down . . . towards the area under his seat, between the seat and door."

The police searched the area around the driver's seat and found a "clear triangular capsule" containing suspected cocaine. At that point, the police directed Ms. Antkowiak to get out of the vehicle, and Officer Silva conducted a full search of the SUV. He uncovered "multiple colored and clear capsules containing an off-white powder substance" suspected to be heroin and Fentanyl; "multiple clear, triangular vials containing a white, rock-like substance" suspected to be crack cocaine; "several small trashcans containing a white, rock-like substance"; "multiple unmarked pills"; "several glass jars, with pink lids" containing suspected cocaine; a syringe; and a glass pipe.

The Anne Arundel County Police Department's Crime Lab analyzed some of the items seized and found 1.44 grams of heroin.

### C.    The Criminal Proceedings

On November 15, 2019, Mr. Gerety and Ms. Antkowiak each were charged by criminal indictment with thirteen counts: possession with intent to distribute heroin, cocaine, fentanyl, a mixture of heroin and fentanyl, and pregabalin[4] under Maryland Code (2002, 2012 Repl. Vol.) § 5-602 of the Criminal Law Article ("CR"); conspiracy to distribute heroin, cocaine, fentanyl, and pregabalin; and possession of heroin, cocaine, fentanyl, and pregabalin under CR § 5-601. Their cases were consolidated.

---

[4] Pregabalin is marketed under the brand name Lyrica and is a Schedule V controlled dangerous substance. *See* CR § 5-406(e)(4).

4

At a hearing on January 31, 2020, the State informed the court that it was proceeding only on the count charging each defendant with simple possession of heroin, subject to an agreed statement of facts.[5] Mr. Gerety and Ms. Antkowiak each entered a plea of not guilty to that charge with the understanding that after the State presented the agreed statement of facts, they would argue that they were immune from prosecution under CP § 1-210(c).

The State played the recording of the 911 call for the court, read into the record the agreed statement of facts, and introduced the drug analysis into evidence. Defense counsel then moved for judgment of acquittal as to each defendant, arguing that they were immune from prosecution for simple possession under the agreed facts. The defense took the position that because the only concern raised by the 911 caller was the safety of Mr. Gerety and Ms. Antkowiak, who appeared to be high and possibly unconscious, the police response resulted directly from the call, so they fell within the immunity provisions of the law.

The State responded that the defendants were not immune under the agreed facts because they did not receive medical assistance—in fact, they refused it—and therefore were not actually experiencing a medical emergency. Alternatively, the State argued

---

[5] During sentencing, the State told the court that it elected not to go forward with the possession with intent to distribute and conspiracy to distribute charges because its expert did not believe that the quantities of drugs found in the vehicle were consistent with distribution of narcotics. The State entered a *nolle prosequi* to the remaining counts against each defendant at the end of the hearing.

5

"inevitable discovery" based upon Mr. Gerety's outstanding warrants, which justified a search of the vehicle independent of the welfare check.[6]

After taking a recess to review the law, the court ruled that the defendants were not immune under CP § 1-210(c). It found "that there [were] facts that distinguish[ed] *Noble* [*v. State*, 238 Md. App. 153 (2018)]," and reasoned that it was "enormously important" that the police "did not respond to the location where their attention was originally drawn by the caller." That was significant, in the court's view, because the movement of the vehicle implicated public safety concerns that must be balanced against the legislative aim underlying the statute, *i.e.*, to combat the opioid epidemic by encouraging reporting of overdoses.[7] The court concluded that the legislature did not "intend[] to create a forever shield [for] everything factually downstream from a response[] . . . to a call[.]"

The court also noted that the movement of the vehicle served as evidence that Mr. Gerety, at least, had regained his faculties after the 911 call was made, and to a degree that permitted him to operate a motor vehicle. This diminished the likelihood that Mr. Gerety was suffering from a medical emergency and demonstrated that he should no longer be "under the . . . umbrella Good Samaritan shield of protection . . . ." The court also considered that the 911 caller initially asked for the police, not paramedics, to respond, and that the caller was a stranger to the defendants.

---

[6] The trial court cut off this argument, noting that the defendants were not raising a "Fourth Amendment suppression issue."

[7] The State did not charge Mr. Gerety with a traffic violation.

For all of those reasons, the court denied the motion for judgment of acquittal and convicted Mr. Gerety and Ms. Antkowiak of the charge of possession of heroin. The court sentenced them to time served (101 days), and this timely appeal followed.

## II. DISCUSSION

Mr. Gerety and Ms. Antkowiak reprise on appeal the argument they made in the circuit court, *i.e.*, that CP § 1-210(c) immunized from criminal prosecution for possession of heroin because the police discovered them and the drugs solely as a result of the 911 call.[8] We agree with them that the circuit court's narrow construction of Maryland's Good Samaritan statute was inconsistent with the plain language of the statute and its legislative purpose, as first analyzed in *Noble*, 238 Md. App. at 153, and hold that both were immune from prosecution under these circumstances.

Because the sole issue on appeal turns on the construction of CP § 1-210, we review the circuit court's ruling *de novo*. *See Bellard v. State*, 452 Md. 467, 480 (2017) ("An appellate court reviews without deference a trial court's interpretation of a statute." (*quoting Howard v. State*, 440 Md. 427, 434 (2014)). In construing CP § 1-210, our primary task is to determine what the General Assembly intended:

> The cardinal rule of statutory interpretation is to ascertain and effectuate the real and actual intent of the Legislature. A court's primary goal in interpreting statutory language is to discern the legislative purpose, the ends to be accomplished, or the evils to be remedied by the statutory provision under scrutiny.

---

[8] They phrased the Question Presented in their briefs as follows: "Were appellants immune from criminal prosecution under the Good Samaritan statute, Criminal Procedure Article § 1-210?"

7

To ascertain the intent of the General Assembly, we begin with the normal, plain meaning of the statute. If the language of the statute is unambiguous and clearly consistent with the statute's apparent purpose, our inquiry as to the legislative intent ends ordinarily and we apply the statute as written without resort to other rules of construction. We neither add nor delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the statute, and we do not construe a statute with "forced or subtle interpretations" that limit or extend its application.

We, however, do not read statutory language in a vacuum, nor do we confine strictly our interpretation of a statute's plain language to the isolated section alone. Rather, the plain language must be viewed within the context of the statutory scheme to which it belongs, considering the purpose, aim, or policy of the Legislature in enacting the statute. We presume that the Legislature intends its enactments to operate together as a consistent and harmonious body of law, and, thus, we seek to reconcile and harmonize the parts of a statute, to the extent possible consistent with the statute's object and scope.

Where the words of a statute are ambiguous and subject to more than one reasonable interpretation, or where the words are clear and unambiguous when viewed in isolation, but become ambiguous when read as part of a larger statutory scheme, a court must resolve the ambiguity by searching for legislative intent in other indicia, including the history of the legislation or other relevant sources intrinsic and extrinsic to the legislative process. In resolving ambiguities, a court considers the structure of the statute, how it relates to other laws, its general purpose and relative rationality and legal effect of various competing constructions.

In every case, the statute must be given a reasonable interpretation, not one that is absurd, illogical or incompatible with common sense.

*State v. Bey*, 452 Md. 255, 265-66 (2017) (*quoting State v. Johnson*, 415 Md. 413, 421–22 (2010) (*quoting Lockshin v. Semsker*, 412 Md. 257, 274–77 (2010))).

8

Consistent with these principles, our starting point is the language of the statute. CP § 1-210 is designed to provide a form of immunity from prosecution and sanctions for substance users who report or experience a medical emergency:

> (a) The act of seeking, providing, or assisting with the provision of medical assistance for another person who is experiencing a medical emergency after ingesting or using alcohol or drugs may be used as a mitigating factor in a criminal prosecution of:
>
> > (1) the person who experienced the medical emergency; or
> >
> > (2) any person who sought, provided, or assisted in the provision of medical assistance.
>
> (b) A person who, in good faith, seeks, provides, or assists with the provision of medical assistance for a person reasonably believed to be experiencing a medical emergency after ingesting or using alcohol or drugs shall be immune from criminal arrest, charge, or prosecution for a violation of § 5-601, § 5-619, § 5-620, § 10-114, § 10-116, or § 10-117 of the Criminal Law Article if the evidence for the criminal arrest, charge, or prosecution was obtained solely as a result of the person's seeking, providing, or assisting with the provision of medical assistance.
>
> (c) A person who reasonably believes that the person is experiencing a medical emergency after ingesting or using alcohol or drugs shall be immune from criminal arrest, charge, or prosecution for a violation of § 5-601, § 5-619, § 5-620, § 10-114, § 10-116, or § 10-117 of the Criminal Law Article if the evidence for the criminal arrest, charge, or prosecution was obtained solely as a result of the person seeking or receiving medical assistance.
>
> (d) A person who seeks, provides, or assists with the provision of medical assistance in accordance with subsection (b) or (c) of this section may not be sanctioned for a violation of a condition of pretrial release, probation, or parole if the evidence of the violation was obtained solely as a result of the

person seeking, providing, or assisting with the provision of medical assistance.

The first case analyzing this statute, *Noble*, addressed and resolved one source of ambiguity: whether the immunity attached only to the person who called for assistance, as the State argued there, or also to the person experiencing the medical emergency. *Noble* involved subsection (d) of the statute, which relates to sanctions for violation of conditions of pretrial release, probation, and parole, because the appellant in that case challenged a finding that he had violated his probation by failing to abstain from drugs. 238 Md. App. at 156. The circuit court had found him in violation based on evidence found after a 911 call placed by his girlfriend. He argued that he was immune from sanction under CP § 1-210(d) even though he hadn't himself made the call, *id.* at 157–59, and we agreed, holding that though subsection (d) did not specify that it applied to passive recipients of medical assistance, that section cross-referenced subsection (c), which did apply to persons "receiving medical assistance." *Id.* at 164.

We grounded our holding in *Noble* in the purpose of the statute, which was enacted in response to the opioid crisis and recognized a shift in public policy toward prioritizing the prevention of overdose deaths over the prosecution of "certain, limited, crimes" often committed by drug users. *Id.* at 167 (footnote omitted). The overarching purpose of CP § 1-210 is to "save lives" by "encourag[ing] people to call for medical assistance when a person is believed to be suffering from an overdose." *Id.* To achieve that purpose, CP § 1-210 grants limited immunity both to persons who seek or obtain medical assistance for others at subsection (b), *and* to persons who seek medical

assistance for themselves or are passive recipients of medical assistance because of another's actions, under subsection (c). *Id.* at 165–72. We held that to construe the statute not to protect passive recipients of medical assistance would be "inconsistent with the General Assembly's stated goal of saving lives by encouraging people to call for help" because a person who suspects that another is overdosing might be deterred from seeking help by fear of the legal repercussions for the recipient of medical aid. *Id.* at 172.

This appeal implicates CP § 1-210(c). To qualify for immunity under that subsection, a defendant must satisfy three elements. *First*, the person seeking medical attention must hold a reasonable belief that the subject of the call is "experiencing a medical emergency after ingesting or using alcohol or drugs." CP § 1-210(c). *Second*, the subject(s) of the call must be arrested, charged, or criminally prosecuted with one of the enumerated criminal violations. *Id. Third*, the evidence supporting the arrest, charge, or criminal prosecution must have been "obtained solely as a result of the person seeking or receiving medical assistance." *Id.* All three of these elements were satisfied here.

### A. The 911 Caller Reasonably Believed That Mr. Gerety And Ms. Antkowiak Were Experiencing A Medical Emergency.

The trial court in this case concluded that Mr. Gerety and Ms. Antkowiak were not experiencing a medical emergency, both because of the movement of the vehicle after the 911 call was placed and because they declined medical assistance at the scene. On appeal, Mr. Gerety and Ms. Antkowiak contend that the statute does not require certainty that the subject of a call for medical assistance is experiencing an overdose, only a reasonable belief. The State does not argue to the contrary, and we agree that the circuit court

11

focused on the wrong question.

In *Noble*, 238 Md. App. at 153, we recounted the legislative history of CP § 1-210 in construing subsection (d), and the amendments to subsection (c) of the law we reviewed in *Noble* are relevant here. *See Md. Nat'l Bank v. Pearce*, 329 Md. 602, 619 (1993) (legislative history is persuasive evidence of the meaning of a statute). As originally enacted in 2014, subsection (c) was more focused on the user, and the language seemed to require greater certainty about the fact of an emergency:

> (c) A person who experiences a medical emergency after ingesting or using alcohol or drugs shall be immune from criminal prosecution for a violation of §§ 5-601, 5-619, 10-114, 10-116, and 10-117 of the Criminal Law Article if the evidence for the criminal prosecution was obtained solely as a result of another person's seeking medical assistance.

2014 Md. Laws, chap. 401. The 2015 amendments to the law broadened the universe of people entitled to immunity and specifically reduced the trigger from a certain emergency to a reasonable belief:

> (c) A person who ~~experiences~~ **reasonably believes that the person is experiencing** a medical emergency after ingesting or using alcohol or drugs shall be immune from criminal **arrest, charge, or** prosecution for a violation of §§ 5-601, 5-619, **5-620,** 10-114, 10-116, and 10-117 of the Criminal Law Article if the evidence for the criminal **arrest, charge, or** prosecution was obtained solely as a result of ~~another person's~~ **the person** seeking **or receiving** medical assistance.

2015 Md. Laws, chap. 375 (deletions indicated by strikethroughs; additions indicated by bolding). The Fiscal and Policy Note for the 2015 amendments confirms this intention:

> [The amendment] establishes that immunity applies to situations involving a person who, in good faith provides medical assistance to another *reasonably believed to be*

12

> *experiencing a medical emergency*, *or, a person who reasonably believes that he or she is experiencing a medical emergency*, rather than the current application of immunity to situations involving a person who is experiencing a medical emergency.

Dep't Legis. Servs., *Fiscal and Policy Note, S.B. 654*, at 1–2 (2015 Session) (emphasis added). Thus, between 2014 and 2015, the legislature extended immunity to a recipient of medical assistance, even if they did not suffer a medical emergency, so long as the person seeking medical attention reasonably believed the recipient was experiencing a drug or alcohol induced medical emergency. This change encourages drug users and bystanders alike to call 911 at the first sign of distress without fear that if they are mistaken about the extent of the emergency, that they could face criminal consequences for minor drug and alcohol offenses.

That purpose was served here. Charles, a citizen with no apparent connection to Mr. Gerety or Ms. Antkowiak, called 911 to report his concern that they were passed out because they were "really high." Although Charles asked initially for police to respond, the 911 operator understood this as a medical emergency call and connected Charles with the fire department. Officer Silva also was dispatched to the scene, but his purpose was to perform a welfare check, as his notes reflected and as he advised Mr. Gerety and Ms. Antkowiak. Section 1-210(c) does not require a citizen to evaluate the subject of a call medically, nor does it require there to be an emergency after all—the statute requires only that the caller act on a reasonable belief that the subject is experiencing a drug or alcohol induced medical emergency. That is exactly what happened here and, to its credit, the State does not contend otherwise.

13

**B.     Mr. Gerety And Ms. Antkowiak Were Charged With And Prosecuted For One Of The Enumerated Crimes.**

The criminal violations covered by the immunity provisions of CP § 1-210 are simple possession of drugs, CR § 5-601; possession of drug paraphernalia, CR §§ 5-619-20; and crimes related to underage possession of alcohol. CR §§ 10-114, 10-116, & 10-117. Although Mr. Gerety and Ms. Antkowiak initially were charged with possession with intent to distribute and conspiracy to distribute cocaine, heroin, fentanyl, and pregabalin—charges that would not be shielded by the immunity provisions—the State ultimately elected to proceed on a single count of possession of heroin against each of them. If CP § 1-210 is otherwise satisfied, then, they were immune from prosecution for that charge.[9]

**C.     The Evidence Supporting The Criminal Prosecution Was Obtained Solely As A Result Of The Call For Medical Assistance.**

The State does not dispute that Mr. Gerety and Ms. Antkowiak, as passive recipients of a medical assistance initiated by a 911 call for a suspected drug overdose, were protected persons under CP § 1-210(c). Instead, the State argues that the drugs seized from the SUV were not "obtained *solely* as a result" of their receipt of medical

---

[9] And this distinguishes this case from our recent decision in *Glanden v. State*, ___ Md. App. ___, Nos. 1114, 1871, 1872, and 1873, Sept. Term 2019 (Feb. 5, 2021). The defendant in *Glanden* was convicted of possession with intent to distribute fentanyl, a charge not immunized under § 1-210(b) or (c). When the State cited the conviction as a violation of his existing probation, he argued that he was entitled to immunity under (d). We disagreed, holding that the violation of probation resulted from the non-immunized conviction, and not "solely as a result" of the request for medical assistance that led authorities to the scene. *Glanden*, slip op. at 15–17. But here, we don't have the intervening step. The lone possession charge at issue here is indisputably among those listed in (b) and (c).

assistance. (Emphasis added.) In the State's view, the police searched the vehicle only after Mr. Gerety was arrested on outstanding warrants, which broke the causal chain between the 911 call and the evidence supporting the possession charge.[10] It analogizes to the doctrine of attenuation under Fourth Amendment jurisprudence.

The attenuation doctrine permits a court to ask, "whether there exists a strong enough causal connection between the primary taint [of a Fourth Amendment violation] and the challenged evidence to require the exclusion of that information." *Myers v. State*, 395 Md. 261, 286 (2006). This doctrine, like the inevitable discovery and independent source doctrines, permits the government to purge the taint of unlawful police conduct and avoid the harsh impact of the exclusionary rule. *See Miles v. State*, 365 Md. 488, 520–21 (2001). These doctrines "balance[e] the protections of the Fourth Amendment with the need for effective law enforcement . . . ." *Id.* at 520.

The problem with the State's argument is that there is no Fourth Amendment taint here to be purged. All else being equal, Mr. Gerety's outstanding warrants *would* have allowed the officers to arrest him and search him and the vehicle incident to arrest. But unlike the exclusionary rule, which bars the State from introducing evidence seized in a

---

[10] As mentioned, a variant of this argument was raised by the State in the trial court, but was not a basis of the court's ruling that Mr. Gerety and Ms. Antkowiak were not immunized by CP § 1-210. We may, of course, affirm the trial court's ruling on any basis adequately supported by the record. *See, e.g.*, *Elliott v. State*, 417 Md. 413, 435 (2010) ("Where the record in a case adequately demonstrates that the decision of the trial court was correct, although on a ground not relied upon by the trial court and perhaps not even raised by the parties, an appellate court will affirm." (*quoting Robeson v. State*, 285 Md. 498, 502 (1979)). Because the court did not rule on this basis, however, Mr. Gerety and Ms. Antkowiak did not address this argument in their brief in this Court.

15

manner that violates the Fourth Amendment (and without regard to the seriousness of the crime), the immunity provisions of CP § 1-210 apply to minor charges supported by evidence obtained solely as a result of a call for medical assistance. Put another way, § 1-210 asks a different question: why were officers at the scene in the first place? If they were there solely as a result of a call for emergency medical assistance, the caller and recipient(s) of assistance are immune from prosecution for the listed charges, whatever evidence might properly have been seized.

Section 1-210 is not a "get-out-of-jail free card." *Noble*, 238 Md. App. at 168 (*quoting Hearing on H.B. 416 Before the H. Judiciary Comm.*, 2014 Reg. Sess. (Feb. 11, 2014)). The legislature struck a balance between prosecuting minor drug crimes and encouraging reporting of suspected overdoses. Section 1-210 does not prohibit police from conducting searches and seizures of evidence—to the contrary, it anticipates that evidence will be seized as officers and medical professionals arrive at the scene and deliver medical care.[11] If they find evidence that supports charges not covered by the

---

[11] The legislature also anticipated that outstanding warrants would be discovered and executed during emergency medical calls governed by CP § 1-210. As originally proposed, House Bill 416 would have prohibited the police from arresting a person on an outstanding warrant discovered during drug and alcohol related medical calls. *See* House Bill 416 (2014), first reader. The provision that ultimately became subsection (c) then stated:

> (B) A person who experiences an alcohol – or a drug-related overdose and is in need of medical assistance
>> (1) Shall be immune from criminal prosecution for a violation of §§ 5-601, 5-619, 10-116, and 10-117 of the Criminal Law Article if the evidence for the

(Continued…)

16

immunity provisions of § 1-210, *compare Glanden*, ___ Md. App. at ___, slip op. at 15–17, officers are free to arrest on and prosecute those charges in the normal course. If, as in *Glanden*, the discovery included a quantity of controlled dangerous substances consistent with the intent to distribute or drug paraphernalia consistent with distribution, § 1-210 wouldn't affect the case. But where, as here, the evidence seized supports only charges enumerated in § 1-210, the limited immunity provisions apply so long as the evidence was "obtained solely as a result of the person seeking or receiving medical assistance."

The State's argument here would require us to create a back-door judicial exception to the statutory scheme. But it would be inconsistent with the balance the General Assembly struck to allow an after-the-fact justification for the charges when officers were on the scene, and thus in a position to check Mr. Gerety's outstanding warrants, "solely as a result" of a call for medical assistance. Evidence routinely will be

---

(…continued)

> criminal prosecution was obtained solely as a result of the person's seeking medical assistance; and
>
> (2) *May not be detained on or prosecuted in connection with an outstanding warrant for another nonviolent crime if the* person's *seeking medical assistance is the reason for the person's encounter with law enforcement*.

*Id.* (emphasis added). The Maryland State's Attorneys' Association opposed that provision, however, and it was deleted as part of the amendments made before the bill received a favorable report from the House Judiciary Committee. *See Hearing on H.B. 416 Before the H. Judiciary Comm.*, 2014 Reg. Sess. (Feb. 11, 2014); House Bill 416 (2014), third reader (striking out the outstanding warrant provision). The language pertaining to the discovery of evidence during a medical response call under CP § 1-210 remained unchanged and was not the subject of debate.

"obtained" during medical response calls. Police may, as here, seek consent to search, may conduct a search incident to arrest on charges not covered by the immunity provisions, may see evidence in plain view, or, as here, conduct a search after executing an outstanding warrant discovered during a routine identification check. In each scenario, the evidence would be lawfully obtained through means arguably independent of anyone seeking or receiving medical assistance. But allowing charges for the listed offenses under those circumstances would eviscerate the immunity provisions of CP § 1-210 and defeat the overarching purpose of encouraging people to report suspected overdoses.

And indeed, if the General Assembly had intended to limit immunity in cases where evidence was seized in a search incident to arrest or other independent means during a response to a call for medical assistance, it could have done so. The statutes in at least four states—Illinois,[12] Minnesota, Pennsylvania, and Vermont—specify that charges arising from evidence obtained through an independent source fall outside the immunity protections under their Good Samaritan statutes.[13] *See* 720 Ill. Comp. Stat. Ann. § 570/414 (limited immunity does not apply "if law enforcement has reasonable

---

[12] An Illinois appellate court interpreted the independent source exception narrowly in *People v. Markham*, 126 N.E.3d 759, 764 (Ill. App. Ct. 2019) (reasoning that heroin discovered in a defendant's wallet after he had been administered Naloxone inside a residence was obtained "as a result" of the call for medical assistance even though the defendant asked the police to retrieve his wallet for him because to construe the statute otherwise would eviscerate the purpose the statute).

[13] Although the Minnesota statute was enacted the same year as CP § 1-210 and the Pennsylvania statute followed passage of the Maryland bill, the Illinois and Vermont statutes preceded our Good Samaritan statute and were referenced in "Exhibit 2" to the Fiscal and Policy Note, summarizing common characteristics of statutes around the nation. *See* Dep't Legis. Servs., *Fiscal and Policy Note, H.B. 416*, at 6 (2014 Session).

suspicion or probable cause to detain, arrest, or search the person described in subsection (b) or (c) of this Section for criminal activity and the reasonable suspicion or probable cause is based on information obtained prior to *or independent of* the individual described in subsection (b) or (c) taking action to seek or obtain emergency medical assistance and not obtained as a direct result of the action of seeking or obtaining emergency medical assistance") (emphasis added); Minn. Stat. Ann. § 604A.05 (limited immunity statute does not "preclude prosecution of a person on the basis of evidence obtained from *an independent source*") (emphasis added); 35 Pa. Stat. Ann. § 780-113.7 (statute does not "bar charging or prosecuting a person for offenses enumerated in subsection (b) if a law enforcement officer obtains information prior to *or independent of the action* of seeking or obtaining emergency assistance as described in subsection (a)") (emphasis added); Vt. Stat. Ann. tit. 18, § 4254 (statute does not "preclude prosecution of the person on the basis of evidence obtained from an *independent source*") (emphasis added). It didn't.

When determining whether evidence was obtained "solely as a result" of a call for medical assistance, then, CP § 1-210 requires courts to focus solely on the reason officers are at the scene at all. If officers are only at a scene because someone called for medical assistance, evidence supporting the enumerated charges would not have been discovered but for the presence of law enforcement related to a report of a drug or alcohol related medical emergency, and the caller and anyone receiving medical services are entitled to limited immunity. If the police were present for reasons other than a call for medical assistance, evidence found would not be obtained "*solely* as a result" of the medical

19

call.[14] CP § 1-210(c) (emphasis added).

That is exactly what happened here. Officer Silva went to the Checkers in Linthicum Heights "solely" because a bystander called 911 to report concerns that Mr. Gerety and Ms. Antkowiak were "really high" and appeared to be unconscious in a vehicle. Officer Silva's execution of the medical welfare check was the only reason he noticed that Mr. Gerety was under the influence of drugs and was behaving nervously, which was the justification for the request for identification that led to the discovery of the outstanding warrants. Mr. Gerety and Ms. Antkowiak were protected persons under CP § 1-210(c) because they were the subject of a call for medical assistance for a suspected opioid overdose. The heroin seized from the SUV in which they were found was obtained solely because the police were called to the scene to check on their welfare. They were immune from prosecution for possession of heroin, and we reverse their convictions.

> **JUDGMENTS OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY REVERSED. COSTS TO BE PAID BY ANNE ARUNDEL COUNTY.**

---

[14] Virginia makes explicit in its Good Samaritan statute that if the request for medical assistance is made during the execution of a search warrant or during an arrest, the immunity provisions don't apply. *See* Va. Code Ann. § 18.2-251.03.C (immunity protections do not apply "to any person who seeks or obtains emergency medical attention for himself or another individual, or to a person experiencing an overdose when another individual seeks or obtains emergency medical attention for him, *during the execution of a search warrant or during the conduct of a lawful search or a lawful arrest*") (emphasis added).