*In Re: J.B.*, Nos. 107 and 2168, September Term, 2023, filed March 28, 2024. Opinion by Beachley, J.

**STATUTORY INTERPRETATION – PLAIN LANGUAGE – EXCLUSIVE ORIGINAL JURISDICTION**

**Facts**: In the Circuit Court for Harford County, sitting as a juvenile court, twelve-year-old J.B. (appellant) was charged with first- and second-degree assault. Pursuant to a plea agreement, J.B. admitted to "involvement" to second-degree assault, and the State nol prossed the first-degree assault charge. J.B. immediately moved to dismiss the juvenile petition for lack of jurisdiction, arguing that recent changes in Maryland's juvenile justice laws meant that the juvenile court lacked jurisdiction to adjudicate the second-degree assault charge. After the presiding magistrate agreed and recommended dismissal of the juvenile petition, the State filed exceptions.

At the exceptions hearing, the State argued that under CJP § 3-8A-03(a), the court retained jurisdiction over the second-degree assault charge because it arose out of the same incident as the crime of violence (first-degree assault) that initially brought the case within the juvenile court's jurisdiction. J.B. argued that the Juvenile Justice Restoration Act established, for the first time, minimum ages of jurisdiction for the juvenile court and that, because twelve-year-old J.B. could not be independently charged with second-degree assault under the new law, the court was divested of jurisdiction after the crime of violence was nol prossed. The circuit court granted the State's exceptions and remanded the case to the magistrate for disposition. J.B. then appealed.

**Held:** Affirmed.

Applying CJP § 3-8A-03(a)'s plain language, the Appellate Court of Maryland held that the juvenile court did not lose jurisdiction to adjudicate the second-degree assault charge after the State entered a *nolle prosequi* to first-degree assault. CJP § 3-8A-03(a)(1)(ii)(1) clearly granted the juvenile court exclusive original jurisdiction over first-degree assault, "a crime of violence as defined in § 14-101 of the Criminal Law Article." Likewise, subsection (a)(1)(ii)(2) expressly provided the juvenile court with jurisdiction to adjudicate the second-degree assault charge because that alleged act arose "out of the same incident" as the first-degree assault. Consistent with *Gray v. State*, 6 Md. App. 677 (1969), the Legislature did not intend to "oust" the juvenile court of jurisdiction where a juvenile accepts a plea to a lesser-included offense.

Circuit Court for Harford County
Case No. C-12-JV-22-000149

REPORTED

IN THE APPELLATE COURT

OF MARYLAND

Nos. 107 & 2168

September Term, 2023

_____

IN RE: J.B.

_____

Reed,
Beachley,
Harrell, Glenn T., Jr.
    (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Beachley, J.

_____

Filed: March 28, 2024

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

In the Circuit Court for Harford County, sitting as a juvenile court, twelve-year-old appellant J.B.[1] admitted that he committed a second-degree assault related to a physical altercation with another student outside of a middle school. Pursuant to a plea agreement, the State nol prossed a first-degree assault charge arising out of the same incident. Before disposition, J.B. moved to dismiss the juvenile petition for lack of jurisdiction, relying on recent changes in Maryland's juvenile justice laws that we shall discuss *infra*. After a magistrate granted J.B.'s motion and recommended dismissal of the petition, the State filed exceptions. After a hearing, the juvenile court found that the magistrate erred and remanded the case for disposition. In this appeal, J.B. presents the following question for our review:

> Where the State charged twelve-year-old J.B. with first-degree and second-degree assault and then nol prossed the first-degree assault, does the juvenile court lack jurisdiction under the JJRA,[2] which excludes from its jurisdiction all twelve-year-old children except those charged with crimes of violence?

We hold that the juvenile court retained jurisdiction over J.B. to adjudicate the second-degree assault charge because it arose out of the same incident as the first-degree assault that brought the matter within the juvenile court's exclusive original jurisdiction.

## BACKGROUND AND FACTS

### Maryland's Juvenile Justice System

"Maryland has a separate judicial process, procedures, punishments, and methods

---

[1] We shall interchangeably refer to J.B. as "J.B." or "appellant."

[2] Juvenile Justice Reform Act. 2022 Md. Laws
https://mgaleg.maryland.gov/2022RS/chapters_noln/Ch_41_sb0691T.pdf.

of treatment, for juveniles alleged to have committed otherwise criminal offenses." *In re Franklin P.*, 366 Md. 306, 328-29 (2001) (citing *In re Victor B.*, 336 Md. 85, 91-93 (1994)). This separate system reflects the General Assembly's intent to place juveniles in a process that is "civil, not criminal, [in] nature." *Id.* at 329. The goal of the juvenile system is to "provide for the care, protection, and wholesome mental and physical development of children . . . and to provide for a program of treatment, training, and rehabilitation consistent with the child's best interests and the protection of the public interest[.]" Md. Code (1974, 2020 Repl. Vol.), § 3-8A-02(a)(4) of the Courts and Judicial Proceedings Article ("CJP"). To achieve this, juvenile courts balance considerations of "(i) [p]ublic safety and the protection of the community; (ii) [a]ccountability of the child to the victim and the community for offenses committed; and (iii) [c]ompetency and character development to assist children in becoming responsible and productive members of society[.]" CJP § 3-8A-02(a)(1).

Prior to passage of the Juvenile Justice Reform Act ("JJRA"), which became effective on June 1, 2022, the jurisdiction of the juvenile court encompassed all children regardless of age. The now-repealed statute concerning juvenile jurisdiction provided in relevant part:

> (a) In addition to the jurisdiction specified in Subtitle 8 of this title, the court has exclusive original jurisdiction over:
>> (1) A child who is alleged to be delinquent or in need of supervision or who has received a citation for a violation . . . .

CJP § 3-8A-03(a).

In 2022, the General Assembly significantly altered the jurisdictional authority of

2

Maryland juvenile courts by establishing a minimum age for the juvenile court to exercise jurisdiction and limiting the types of crimes over which the juvenile court has jurisdiction. Following the report of the Juvenile Justice Reform Council ("JJRC"), which was established in 2019 to review and recommend changes to the juvenile justice system,[3] the General Assembly passed the JJRA during its 2022 session. The act, among other things, altered the jurisdiction of juvenile courts based on the age of the juvenile and the severity of the offense. Relevant here, CJP § 3-8A-03(a) now provides:

> (a) In addition to the jurisdiction specified in Subtitle 8 of this title, the court has exclusive original jurisdiction over:
> (1) A child:
> (i) Who is at least 13 years old alleged to be delinquent; or
> (ii) . . . who is at least 10 years old alleged to have committed an act:
> (1) That, if committed by an adult, would constitute a crime of violence, as defined in § 14-101 of the Criminal Law Article; or
> (2) Arising out of the same incident as an act listed in item 1 of this item[.]

CJP § 3-8A-03(a)(1)(i) and (ii).[4] Once jurisdiction is obtained, there is a "presumption of

---

[3] The JJRC was given a directive from the General Assembly to, in part:

"(f)(3) use[] a data-driven approach [to] develop a statewide framework of policies . . . to increase public safety and reduce recidivism of youth offenders; (4) research best practices for the treatment of juveniles who are subject to the criminal and juvenile justices systems; [and] (5) identify and make recommendations to limit or otherwise mitigate risk factors that contribute to juvenile contact with the criminal and juvenile justice systems[.]"

2019 Md. Laws 1535.

[4] The statute was amended in 2023; however, the amendments have no bearing on our decision.

3

continuing jurisdiction," *In re Valerie H.*, 310 Md. 113, 120 (1987), and "jurisdiction continues until [the juvenile] reaches 21 years of age unless terminated sooner." CJP § 3-8A-07(a).

## J.B.'s Case and the Interpretation Issue

On April 12, 2022, J.B. pushed another student, M.M., to the ground twice during school hours after M.M. tried to apologize to J.B. for stepping on J.B.'s shoes. M.M. suffered two broken bones in his right arm as a result of J.B.'s actions. J.B. admitted to an assistant principal that he pushed M.M., and expressed remorse for his actions. In response to this incident, the State filed a juvenile petition on July 27, 2022, alleging that J.B. committed first-degree and second-degree assault.

J.B. appeared before a magistrate on October 3, 2022, for an adjudication hearing. J.B. accepted a plea agreement wherein he admitted involvement to second-degree assault in exchange for the State's dismissal of the first-degree assault charge. After the magistrate accepted the plea, J.B.'s counsel immediately moved to dismiss, arguing that "under the new statute," the "[c]ourt no longer ha[d] jurisdiction over [J.B.]" because second-degree assault is "not a crime of violence."

The State countered that the statute was "very clear" that when a "child under the age of 13" is "charged with a crime of violence . . . then any other charge associated with the incident is also within the jurisdiction of the [c]ourt." The magistrate recommended dismissal of the case, reasoning that because J.B. was "under the age of 13 and has not been found responsible for any felony or crime of violence [the court is] without jurisdiction."

4

The juvenile court held a hearing on the State's exceptions to the magistrate's recommendations on October 17, 2022. The State argued that once J.B. was charged with first-degree assault, a "crime of violence and a felony," the court maintained "jurisdiction over the entirety of the case." The State reasoned that the plain language of CJP § 3-8A-03(a)(1)(ii) provides the juvenile court with jurisdiction over a crime of violence as well as "any act arising out of the same incident" involving the charged crime of violence. The State also posited that J.B.'s interpretation would result in the loss of "meaningful plea bargaining because . . . misdemeanor[s] would no longer be in the jurisdiction of the [c]ourt."

Defense counsel responded by noting that the JJRA established, for the first time, minimum ages of jurisdiction for the juvenile court as part of the overall effort to reduce juveniles' contact with the juvenile justice system. Defense counsel interpreted the "arising out of the same incident" language to mean a "separate and distinct charge" such as "malicious destruction of property or fourth-degree burglary[,]" but not a lesser included charge (second-degree assault) to the crime of violence (first-degree assault). As a policy matter, defense counsel argued that the State's interpretation would "open[] the door to the State overcharging . . . to get around the new statute[,]" because "there is pressure on the State to overcharge and bring these cases[.]"

In response, the State denied that there was any pressure to prosecute juvenile cases and noted that prosecutorial "ethics overrules any kind of pressure" to overcharge. Furthermore, the State maintained that the trial process checked against overcharging,

5

because "if [juveniles] are found not guilty . . . then the [c]ourt wouldn't have jurisdiction."

The court took the matter under advisement. In its written opinion dated February 17, 2023, the court rejected the magistrate's interpretation of the statute and, concomitantly, the magistrate's recommendation of dismissal. The court noted that "§ 3-8A-03(a)(1)(ii)(2) . . . appears to provide that if a juvenile is charged with a crime of violence . . . he may be adjudicated delinquent of a lesser included or related offense" arising out of the same incident "even if that charge is not a crime of violence." Although the court acknowledged that its interpretation may be "theoretically . . . viewed as an encouragement for prosecutors to 'over charge' a juvenile in order to give the [j]uvenile [c]ourt jurisdiction," the court noted that such concern was mitigated by the "opportunity [for the defense] to argue that the lesser charge is more applicable to the case."

After the juvenile court rejected the magistrate's recommendation and remanded the case, J.B. noted an appeal (No. 107, Sept. Term 2023). Because the juvenile court did not enter a disposition after remand, we asked the parties to address at oral argument whether there existed a final, appealable order. Thereafter, the parties were able to secure the entry of a final disposition by the juvenile court and J.B. noted a second timely appeal on January 10, 2024 (No. 2168, Sept. Term 2023). On January 29, 2024, we issued an order consolidating the appeals in No. 107 and No. 2168 of the September 2023 term.

## DISCUSSION

### Standard of Review

Questions of statutory interpretation are reviewed *de novo*. *Romeka v. RadAmerica II, LLC*, 485 Md. 307, 323 (2023) (citing *Harvey v. Marshall*, 389 Md. 243, 257 (2005)).

6

The goal of statutory interpretation is to "discern the legislative purpose, the ends to be accomplished, or the evils to be remedied by the statutory provision under scrutiny." *Id.* at 324 (quoting *Lockshin v. Semsker*, 412 Md. 257, 274 (2010)). To achieve this, we "first look to the plain language of the statute." *Id.* (citing *Lockshin*, 412 Md. at 275). When looking at the plain language, we:

> do not read statutory language in a vacuum, nor do we confine strictly our interpretation of a statute's plain language to the isolated section alone. Rather, the plain language must be viewed within the context of the statutory scheme to which it belongs, considering the purpose, aim, or policy of the Legislature in enacting the statute.

*Bennett v. Harford County*, 485 Md. 461, 485 (2023) (quoting *Wheeling v. Selene Fin. LP*, 473 Md. 356, 377 (2021)). "If the language of the statute is unambiguous and clearly consistent with the statute's apparent purpose, our inquiry as to the legislative intent ends ordinarily and we apply the statute as written without resort to other rules of construction." *In re Abhishek I.*, 255 Md. App. 464, 472 (2022) (quoting *White v. State*, 250 Md. App. 604, 638 (2021)).

### Plain Language of CJP § 3-8A-03(a)(1)(ii)

CJP § 3-8A-03(a)(1)(ii) gives the juvenile court exclusive original jurisdiction over a child "who is at least 10 years old alleged to have committed an act" constituting a crime of violence or arising out of the same incident as the alleged crime of violence. J.B.'s plain language argument focuses on the phrase "alleged to have committed an act." In J.B.'s view, "[a] child who is not found involved after a trial or plea of a violent crime necessarily is no longer *alleged to have committed* such an act." From this premise, J.B. concludes that the juvenile court loses jurisdiction if the "court acquits the child of the violent crime

. . . [o]r, as in this case, the State nol prosses the violent crime and the child pleads to a lesser charge[.]" In either circumstance, according to J.B., there is no remaining allegation that the child committed a crime of violence, and the juvenile court therefore lacks authority to adjudicate any other non-violent crimes arising out of the same incident.

The State responds that the plain language of the statute does not support J.B.'s argument that the juvenile court loses jurisdiction if the alleged crime of violence does not survive a trial or plea. The State points out that "J.B. does not dispute that the juvenile court obtained jurisdiction over this case . . . when the State filed its petition[,] [n]or does J.B. dispute that under [CJP] § 3-8A-03(a)(1)(ii)(2) the court's initial jurisdiction included jurisdiction over the alleged second-degree assault because it arose from the same incident as the alleged first-degree assault." The State asserts that "the phrase 'alleged to have committed' cannot be reasonably interpreted as a mandate for terminating the juvenile court's continuing jurisdiction" in light of CJP § 3-8A-03(a)'s silence as to termination or continuation of jurisdiction and CJP § 3-8A-07(a)'s express provision that juvenile jurisdiction continues until the child "reaches 21 years of age unless terminated sooner." The State therefore concludes that the juvenile court correctly denied J.B.'s motion to dismiss for lack of jurisdiction.

Our analysis begins with the plain language of the statute. The statute expressly defines the contours of the juvenile court's "exclusive original jurisdiction." The statute first establishes that the juvenile court has exclusive original jurisdiction over delinquent children who are at least 13 years old. CJP § 3-8A-03(a)(1)(i). The statute further provides that the juvenile court has exclusive original jurisdiction over children who are "at least 10

8

years old alleged to have committed an act" that "would constitute a crime of violence" if committed by an adult, as well as acts "[a]rising out of the same incident" as the alleged crime of violence. CJP § 3-8A-03(a)(1)(ii). The statute also delineates specific circumstances where the juvenile court does not have jurisdiction over the child. CJP § 3-8A-03(d). We first note that the General Assembly, in defining the scope of the juvenile court's jurisdiction, used the same "exclusive original jurisdiction" language in both the predecessor statute and the current statute. That the legislature used "exclusive original jurisdiction" in both statutes is significant given the substantial jurisprudence that exists concerning the meaning and application of the phrase.

In *Parojinog v. State*, 282 Md. 256, 260 (1978), the Court discussed the meaning of exclusive original jurisdiction in juvenile delinquency law:

> When a delinquency petition has been filed, the court, sitting as a juvenile court, has "exclusive original jurisdiction" over the child [CJP § 3-8A-03(a)]. Child is defined to mean a person under the age of 18 years [CJP § 3-8A-01(d)], and, where a person is alleged to be delinquent, "the age of the person at the time the alleged delinquent act was committed controls the determination of jurisdiction" [CJP § 3-8A-05(a)]. Once the juvenile court obtains jurisdiction, "that jurisdiction continues until that person reaches 21 years of age unless terminated sooner" [CJP § 3-8A-07(a)].

Thus, under CJP § 3-8A-03(a)(1) the juvenile court had exclusive original jurisdiction when the State filed the delinquency petition against twelve-year-old J.B. alleging first- and second-degree assault. Indeed, J.B. does not contend otherwise.

The question remains: Was the juvenile court divested of exclusive original jurisdiction when the State entered a *nolle prosequi* to first-degree assault, the only charge that brought J.B. within the court's jurisdiction in the first instance, or did the court retain

9

jurisdiction because second-degree assault constituted an act "arising out of the same incident" as the alleged first-degree assault? Fortunately, we have some Maryland cases to assist us in answering that question.

Our decision in *Gray v. State*, 6 Md. App. 677 (1969), is instructive. In that case, the sixteen-year-old appellant was indicted for the murders of his father and aunt, and tried as an adult in the Circuit Court for Prince George's County. *Id.* at 679. The jury found appellant guilty only as to manslaughter. *Id.* Although appellant conceded that the circuit court had "exclusive jurisdiction" over him when he was indicted for first-degree murder, he argued that the circuit court had "no jurisdiction to try him on manslaughter charges, since there was no waiver by the juvenile court." *Id.* at 682. In appellant's view, the manslaughter verdicts were a nullity because the juvenile court had "original, exclusive jurisdiction" over all crimes not punishable by death or life imprisonment. *Id.* In other words, appellant contended that the circuit court was divested of jurisdiction once he was acquitted of the first-degree murders, the only charges that placed him within the circuit court's jurisdiction.

The Court rejected appellant's jurisdictional argument, holding that:

the Legislature, in excluding from the jurisdiction of juvenile courts, juveniles charged with crimes punishable by death or life imprisonment, did not intend to oust the trial courts of jurisdiction in cases where a verdict of guilty or a plea of guilty to a lesser included offense not punishable by death or life imprisonment is entered.

*Id.* at 684. The Court reasoned that appellant's argument "overlooks the fundamental principle of law that once a court lawfully acquires jurisdiction over the person and the subject matter of the litigation, subsequent events will not ordinarily deprive the court of

10

its jurisdiction, although had they existed at the time, they may have initially precluded the court's jurisdiction." *Id.* at 682. Applying that principle, the Court concluded that the circuit court "clearly had original, exclusive jurisdiction over the appellant on the capital charge . . . and we do not believe that the Legislature intended, after a full trial on the capital charge, to have such proceedings declared to be a nullity where a verdict of second degree murder or manslaughter is returned." *Id.* at 684. The Court therefore held that the circuit court did not lose its jurisdiction over appellant when the jury returned a verdict for manslaughter, a lesser included offense of first-degree murder. *Id.* at 684-85.

*Harris v. State*, 94 Md. App. 266 (1992) is also instructive. There, an automobile driven by Harris crashed into a disabled vehicle on the Capital Beltway, killing an occupant of the disabled car. *Id.* at 271-72. The investigating officer issued traffic citations charging Harris with driving while intoxicated, driving while under the influence of alcohol, failure to control speed to avoid a collision, and negligent driving. *Id.* at 272. Harris then paid the pre-set fines for failure to control speed and negligent driving, which had the effect of "constitut[ing] convictions [for] those offenses." *Id.* The following month, a criminal information was filed in the circuit court charging Harris with seven offenses: manslaughter by automobile (Count 1), reckless driving (Count 2), negligent driving (Count 3), homicide by vehicle while intoxicated (Count 4), failure to control speed to avoid a collision (Count 5), driving while intoxicated ("DWI") (Count 6), and driving while under the influence of alcohol ("DUI") (Count 7). *Id.*

After Harris moved to dismiss, the State conceded that, by virtue of his conviction for the lesser included offense of negligent driving, "double jeopardy barred prosecution

11

of the first five counts of the information, and it *nolle prossed* those counts." *Id.* at 272-73. Harris then moved to dismiss the remaining DWI and DUI charges on the ground that the circuit court lacked jurisdiction over those two charges. *Id.* at 273. The circuit court granted the motion and the State appealed.[5] *Id.*

The *Harris* Court began its analysis by noting that the citations for DWI, DUI, failure to control speed, and negligent driving were all within the exclusive original jurisdiction of the District Court pursuant to CJP § 4-301(a). *Id.* at 274. When the State charged Harris with vehicular manslaughter and homicide by motor vehicle while intoxicated, the District Court and the circuit court had concurrent jurisdiction over those charges. *Id.* at 275. The Court noted that, under [CJP] § 4-302(f)(1)(ii), the District Court:

> does not have jurisdiction of an offense otherwise within the District Court's jurisdiction if a person is charged: . . . (ii) in the circuit court with an offense arising out of the same circumstances and within the concurrent jurisdiction of the District Court and the circuit court described under subsection (d) of this section.

*Id.* The Court rejected Harris's argument that the circuit court lost jurisdiction over the DWI and DUI charges after the State nol prossed the vehicular manslaughter and automobile homicide charges that brought the case within the circuit court's jurisdiction:

> I[t] would appear to be indisputable, in view of the clear and unambiguous language of § 4-302(f), that when the information charging Harris with vehicular manslaughter and other offenses was filed in the circuit court, the District Court was divested of jurisdiction over the two remaining charges—driving while intoxicated and driving while under the influence of alcohol—arising out of the same circumstances, and the circuit court was vested with exclusive original jurisdiction over those offenses.

---

[5] Harris is designated as the appellant in the case because he first noted an appeal concerning denial of his motion to dismiss on double jeopardy grounds. The State subsequently noted its appeal.

12

*Id.* at 276. Thus, jurisdiction over all charges attached in the circuit court when the State filed its seven-count information that included DWI and DUI charges arising out of the same incident, even though those charges would have otherwise been within the District Court's exclusive jurisdiction. *Id.* at 277.

Applying these principles to the case at bar, we conclude that the juvenile court did not lose its jurisdiction to adjudicate the second-degree assault charge after the State entered a *nolle prosequi* to first-degree assault. CJP § 3-8A-03(a)(1)(ii)(1) clearly granted the juvenile court exclusive original jurisdiction over first-degree assault, "a crime of violence as defined in § 14-101 of the Criminal Law Article." Likewise, subsection (a)(1)(ii)(2) expressly provided the juvenile court with jurisdiction to adjudicate the second-degree assault charge because that alleged act arose "out of the same incident" as the first-degree assault. Consistent with *Gray*, we conclude that the Legislature did not intend to "oust" the juvenile court of jurisdiction where a juvenile accepts a plea admitting "involvement" to a lesser-included offense. And the *Harris* Court's observation concerning exclusive original jurisdiction over offenses arising out of the same circumstances is equally applicable here: "[T]he case law suggests that the court will exercise its jurisdiction even when the charge which served as the basis for the assertion of jurisdiction is later *nolle prossed* or eliminated in some other manner." 94 Md. App. at 277. Thus, we conclude that the State's nol pros of first-degree assault pursuant to the plea agreement in this case did not affect the juvenile court's jurisdictional authority to

13

adjudicate the second-degree assault arising out of the same incident.[6]

Although the plain language of CJP § 3-8A-03(a)(1) is clear and unambiguous, a contextual analysis of other subsections of the statute reinforces our conclusion that the juvenile court retained jurisdiction to adjudicate the second-degree assault charge because it was a charge "arising out of the same incident" as the first-degree assault charge. CJP § 3-8A-03(b) provides for the juvenile court's concurrent jurisdiction "over proceedings against an adult for violation of § 3-8A-30 of this subtitle" (contributing to the delinquency of a child). That subsection further provides, in clear language, that the juvenile court may waive jurisdiction "if charges against the adult arising from the same incident are pending in the circuit court." Thus, the Legislature expressly provided for waiver of jurisdiction by the juvenile court if adult charges from the same incident are pending in criminal court. Notably absent in § 3-8A-03(a)(1) is any similar provision for waiver or termination of the juvenile court's jurisdiction.

CJP § 3-8A-03(d)(1) provides that the juvenile court does not have jurisdiction over a child charged with an act that would otherwise be punishable by life imprisonment, "as well as all other charges against the child arising out of the same incident[.]" This contemplates the situation addressed in *Gray* where the Court held that the circuit court retained jurisdiction over the case even though the jury found appellant guilty only of

---

[6] We see nothing in Maryland law that would support J.B.'s argument, based on the "alleged to have committed an act" language in the statute, that the juvenile court loses jurisdiction if the child is not found "involved" as to a crime of violence. The phrase "alleged to have committed" is used in the statute to confer juvenile jurisdiction based on certain acts; it cannot reasonably be construed as terminating the court's continuing jurisdiction in these circumstances.

14

manslaughter, a charge that would have been within the exclusive jurisdiction of the juvenile court. Significantly, subsection (d)(1) expressly provides for removal of the case from the criminal court pursuant to Md. Code (2001, 2018 Repl. Vol., 2023 Supp.), § 4-202 of the Criminal Procedure Article ("CP"), thereby restoring jurisdiction to the juvenile court. CJP § 3-8A-03(d)(4) similarly provides that, absent an order of removal, the juvenile court does not have jurisdiction over children "at least 16 years old alleged to have committed" certain statutorily-delineated crimes, "as well as all other charges against the child arising out of the same incident."

Even a cursory reading of the jurisdictional provisions of CJP § 3-8A-03 reveals that the General Assembly is well aware of the meaning of "exclusive original jurisdiction," and that it consistently employs the phrase "arising out of the same incident" to include within the designated court's jurisdiction charges that may not otherwise be within that court's jurisdiction.[7] *See Wadsworth v. Sharma*, 479 Md. 606, 622 (2022) ("We presume that the General Assembly is 'aware of this Court's interpretation of its enactments and, if such interpretation is not legislatively overturned, to have acquiesced in that interpretation.'" (quoting *Williams v. State*, 292 Md. 201, 210 (1981))). Moreover, although the Legislature has demonstrated the ability to alter jurisdiction by allowing for

---

[7] The Maryland General Assembly is currently considering legislation that would amend provisions of the Juvenile Justice Restoration Act of 2022. *See* H.B. 814 and S.B. 744, 2024 Leg., 446th sess. (Md. 2024). Although the bills propose to amend statutes cited in this opinion, they do not alter the "exclusive original jurisdiction" language of CJP § 3-8A-03(a).

waiver and removal, CJP § 3-8A-03(a)(1) has no such provision.[8] Our interpretation of the statute is in accord with the presumption "that the Legislature intends its enactments to operate together as a consistent and harmonious body of law[.]" *In re Abhishek I.*, 255 Md. App. at 472 (quoting *Gerety v. State*, 249 Md. App. 484, 498 (2021)).

Finally, J.B. contends that juvenile transfer statutes provide an insight to the Legislature's intent on jurisdiction. Juvenile transfer statutes establish a mechanism for juveniles who are tried in criminal court, but later found guilty only of crimes that would otherwise be within the exclusive original jurisdiction of juvenile courts, to petition the criminal court to send them to juvenile court for disposition. *See* CP § 4-202.2. Appellant argues that these statutes demonstrate a legislative desire to "avoid the inequity in sentencing one child in criminal court and another in juvenile court for the same offense(s)," and that this principle should be applied in the case at bar.

We do not share J.B.'s interpretation of the significance of the juvenile transfer statutes. As discussed above, our 1969 decision in *Gray* held that criminal courts retain jurisdiction over juveniles even when they are found guilty of crimes that would ordinarily be within the exclusive jurisdiction of a juvenile court. In 1998, the General Assembly established a commission to examine juvenile justice laws, 1998 Md. Laws 2223, and in 2002, passed the juvenile transfer statutes in response to the commission's finding that it was "unfair" that juveniles did not have a mechanism to return to juvenile court under these

---

[8] We also note that CJP § 3-8A-07(a) generally provides for jurisdiction over a delinquent child "until that person reaches 21 years of age unless terminated sooner." CJP § 3-8A-07(c) provides for termination of jurisdiction over a child over 18 years of age who has been "convicted of a crime[.]"

16

circumstances. 2002 Md. Laws 1584; COMM'N ON JUV. JUST. JURISDICTION, FINAL REPORT TO THE GOVERNOR AND GENERAL ASSEMBLY (2001). In light of this history, if the General Assembly wanted to circumscribe the juvenile court's jurisdiction in circumstances like those presented in this case, it could have enacted a similar statutory mechanism to allow juveniles to seek dismissal of charges that would not otherwise be within the court's original jurisdiction. The General Assembly chose not to do so and we see nothing in the legislative history of § 3-8A-03 that would support appellant's interpretation of the statute.

In conclusion, the plain language of CJP § 3-8A-03(a)(1) and the jurisdictional provisions of § 3-8A-03 as a whole lead us to conclude that the juvenile court retained exclusive original jurisdiction over the second-degree assault charge because it arose out of the same incident as the nol prossed first-degree assault charge that brought the case within the juvenile court's exclusive jurisdiction in the first instance. We therefore affirm the circuit court's denial of J.B.'s motion to dismiss.[9]

**JUDGMENT OF THE CIRCUIT COURT FOR HARFORD COUNTY IS AFFIRMED. COSTS TO BE PAID BY APPELLANT.**

---

[9] Appellant posits that "allowing juvenile cases to continue after the qualifying allegations have been removed would cause the statute to run afoul of the equal protection clause." We decline to address this question because it was not raised below and raises a constitutional issue. *See Hartman v. State*, 452 Md. 279, 300 (2017) ("[O]ur precedents recognize that constitutional issues raised for the first time on appeal, and not raised in the trial court, are not automatically entitled to consideration on the merits under Maryland Rule 8-131(a)."); *see also Balt. Teachers Union v. Bd. of Educ.*, 379 Md. 192, 205–06 (2004) ("It is particularly important not to address a constitutional issue not raised in the trial court in light of the principle that a court will not unnecessarily decide a constitutional question.").

17